# EXHIBIT 1



U.S. Department of Justice

Executive Office for Immigration Review

*Board of Immigration Appeals*

Office of the Clerk
*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

William Walker
1316 E. Broadway Boulevard
Tucson, Arizona 85719

Paul A. Rodrigues
Disciplinary Counsel
OGC/EOIR
5107 Leesburg Pike, Suite 2600
Falls Church, VA 22041

Re: Mary M. Cowan
D2017-0363

Date: July 7, 2023

Enclosed is a copy of the Board's decision and order in the above-referenced case.

*Donna Carr*

Donna Carr
Chief Clerk

Panel Members:
   **DENISE BROWN**
   **GARRY D. MALPHRUS**
   **ELLEN C. LIEBOWITZ**

CC:
Toinette M. Mitchell
Disciplinary Counsel
USCIS/Department of Homeland Security,
5900 Capital Gateway Dr.
Camp Springs, MD 20588

NOT FOR PUBLICATION

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Mary M. COWAN, D2017-0363

Respondent

FILED

JUL 0 7 2023

ON BEHALF OF RESPONDENT: William G. Walker, Esquire

ON BEHALF OF EOIR: Paul A. Rodrigues, Disciplinary Counsel
Casey L. Martinez, Associate General Counsel

ON BEHALF OF DHS: Toinette M. Mitchell, Disciplinary Counsel

IN PRACTITIONER DISCIPLINARY PROCEEDINGS
On Appeal from the Decision of the Adjudicating Official

Before: Malphrus, Deputy Chief Appellate Immigration Judge; Liebowitz, Appellate Immigration Judge; Brown, Temporary Appellate Immigration Judge[1]

Opinion by Brown, Temporary Appellate Immigration Judge

BROWN, Temporary Appellate Immigration Judge

**AMENDED DECISION[2]**

In a December 8, 2020, decision, the Adjudicating Official ("AO") found that the Disciplinary Counsel for the Executive Office for Immigration Review ("EOIR") has met its burden of establishing the factual allegations and disciplinary charges in the Notice of Intent to Discipline, and ordered that the respondent be suspended from the practice before the Immigration Courts, Board of Immigration Appeals ("Board"), and the Department of Homeland Security ("DHS"), for an indefinite period of no less than five years, with conditions for reinstatement. The respondent

---

[1] Temporary Appellate Immigration Judges sit pursuant to appointment by the Attorney General. *See* 8 C.F.R. § 1003.1(a)(4)

[2] The instant amended decision is issued only to correct the Appellate Immigration Judge information in the caption.

D2017-0363

timely appeals this decision. Disciplinary Counsel has requested that the AO's decision be affirmed. The respondent's appeal will be dismissed. For the reasons set forth below, the respondent is ordered suspended from practice for a period of two years.

## I. PROCEDURAL HISTORY

The respondent is an attorney licensed to practice law in the State of Arizona.[3] On August 15, 2019, Disciplinary Counsel initiated these disciplinary proceedings with the filing of a Notice of Intent to Discipline ("NID") and sought to have the respondent suspended from practice before the BIA and the Immigration Courts for a period of two years. The Disciplinary Counsel for DHS subsequently requested that the respondent be similarly suspended from practice before that agency.[4] The NID contended, in 24 Counts, that the respondent is subject to discipline under 8 C.F.R. §§ 1003.102 (j) (frivolous behavior); (n) (conduct prejudicial to the administration of justice); (o) (competence) and (q) (failure to act with reasonable diligence and promptness in representing a client). The respondent filed a timely answer to the NID and requested a hearing, which was granted by the Board in an October 31, 2019, decision.

On May 15, 2020, the AO held a pre-hearing conference where the respondent raised a number of issues that included a request that the AO recuse himself. On June 8, 2020, the AO denied the respondent's motion for recusal. On September 3, 2020, the AO issued a decision granting in part, and denying in part, the DC's Motion to Deem Factual Allegations as Admitted, and deemed as admitted all but five of the factual allegations. On September 8, 2020, the AO held a second pre-hearing conference where he ruled on several motions pertaining to testimony of the respondent's witnesses, length of briefs, and appearances via video teleconference ("VTC"). A five-day disciplinary hearing was held from September 21, 2020, to September 25, 2020. On December 8, 2020, the AO issued a decision dismissing Count 10 charge relating to violations of 8 C.F.R. §§ 1003.102(j) (frivolous behavior), 1003.102(o) (competency), but upholding all remaining counts and charged violations. The AO sanctioned the respondent to an indefinite period of suspension of no less than five years, with permission to seek reinstatement after five years. The AO ordered that when seeking reinstatement, the respondent must file an affidavit, under oath, explaining the changes she has made to her practice to ensure the violations at issue in the disciplinary proceedings are not repeated.

The respondent timely appealed the AO decision. On August 11, 2021, the respondent filed a brief in support of her appeal. On September 9, 2021, DC submitted a brief in response to the appeal requesting that the AO's decision be affirmed, and the suspension order made effective.

---

[3] The AO noted that the respondent is in inactive-retired status in the Commonwealth of Pennsylvania (AO at 2 n.2).

[4] The AO granted the DHS's motion requesting reciprocal discipline for the respondent's appearances before DHS (AO at 2, n.3). *See* 8 C.F.R. § 1003.105(b).

D2017-0363

## II. ISSUES AND STANDARD OF REVIEW

We review the AO's findings of fact for clear error. 8 C.F.R. §§ 1003.1(d)(3)(i); 1003.106(c). We review questions of law, discretion and judgment, and all other issues in appeals, de novo. 8 C.F.R. §§ 1003.1(d)(3)(ii), 1003.106(c); *Matter of Kronegold*, 25 I&N Dec. 157, 159-60 (BIA 2010). In disciplinary proceedings, Disciplinary Counsel "shall bear the burden of proving the grounds for disciplinary sanctions enumerated in the [NID] by clear and convincing evidence." 8 C.F.R. § 1003.106(a)(2)(iv).

The respondent on appeal lodges various arguments challenging the AO's decision, contending, among other things, that she was denied due process, that the evidence introduced by the government "established only past problems with [her] representation" that have "since been substantially corrected," and that given the totality of the facts in her case, "any sanction involving [her] suspension would be unwarranted" (Respondent's Br. at 6-13). The government argues that the AO's findings as to the factual allegations, the disciplinary charges, and the sanction imposed were supported and warranted by the clear and convincing evidence in the record (Disciplinary Counsels ("DC") Br. at 3).

## III. DUE PROCESS

The respondent first argues that she was denied due process of law when the AO granted, in part, Disciplinary Counsel's Motion to Deem Factual Allegations as Admitted, and considered as admitted most of the factual allegations underlying the "first 11 counts" in the NID that the AO found that the respondent did not specifically deny in her answer to the NID pursuant to 8 C.F.R. § 1003.105(c)(1)-(2) (Respondent's Br. at 7-9; *see* Exh. 11 at 4-9). We find no due process violation in the AO's decision to deem as admitted all but three (Exh. 1, ¶¶ 11, 12, 13) of the factual allegations underlying Counts One to Eleven in the NID.[5]

At the outset, we note that the AO's decision granting Disciplinary Counsels' motion clearly distinguished the factual allegations from the disciplinary charges underlying each Count (Exh. 11 at 6). As found by the AO, while the respondent indubitably denied the disciplinary charges against her in her answer to the NID, she did not specifically deny the factual allegations underlying the disciplinary charges (*id.*). The respondent on appeal appears to continue to conflate the factual allegations with the disciplinary charges (Respondent's Br. at 8-9). For the sake of clarity, we underscore that the AO did not deem as admitted the disciplinary charges against the

---

[5] The respondent on appeal does not otherwise challenge the factual allegations underlying "the first 11 counts" that the AO found the respondent *did* specifically deny but which the AO ultimately sustained as proven by clear and convincing evidence (AO at 8-10; *see* Exh. 1, ¶¶ 11, 12, 13; Respondent's Br. at 7-9). The respondent also does not challenge on appeal the AO's decision to deem as admitted the factual allegations underlying Counts Twelve to Twenty-Four in the NID (Respondent's Br. at 7-9). The respondent has waived appeal of these issues. *See, e.g., Matter of A.J. Valdez and Z. Valdez*, 27 I&N Dec. 496, 496 n.1, 498 n.3 (BIA 2018) (noting that an issue addressed in an Immigration Judge's decision is waived when a party does not challenge it on appeal).

D2017-0363

respondent in Counts One to Eleven; rather the AO deemed as admitted most of the factual allegations (except for Exh.1, ¶¶ 11, 12, 13) underlying Counts One to Eleven.

The respondent argues on appeal that "[t]here is no statutory mechanism by which the government should have been able to have such allegations admitted without the right of Respondent to challenge them at the hearing if it is not a summary proceeding" (Respondent's Br. at 8-9). As properly found by the AO, 8 C.F.R. § 1003.105(c)(2) expressly and specifically contemplates the deemed admission of allegations that are not specifically denied in the answer to the NID (Exh. 11 at 6-7). Notably, the respondent on appeal does not address this regulation (Respondent's Br. at 7-9). There is otherwise nothing in 8 C.F.R. § 1003.105(c)(2) that precludes its applicability in disciplinary hearings, or conversely, that its applicability is limited only to summary disciplinary proceedings. We conclude that the AO properly determined that 8 C.F.R. § 1003.105(c)(2) authorizes him to deem as admitted factual allegations that the respondent did not specifically deny in her answer to the NID.

The respondent also asserts on appeal that because of the AO's ruling that deemed as admitted the factual allegations, she was prevented from exploring the facts behind each of the allegations, prevented from challenging the allegations, and materially prejudiced her defense of the first 11 Counts of the NID (*id.* at 7-9). The respondent argues that as a consequence, the AO's decision concerning these first 11 Counts should be reversed (*id.* at 9). The respondent's arguments are unavailing.

The transcript shows that while the AO deemed as admitted most of the factual allegations underlying Counts One to Eleven, the respondent's counsel was fully accorded and took the opportunity to explore with the respondent, at length, the circumstances underlying each of the factual allegations in Counts One to Eleven (i.e., in the AO's words, "to elucidate why she did what she did"), to defend the respondent's actions, and to dispute the disciplinary charges under 8 C.F.R. § 1003.102 (j), (n), (o), and (q), that were lodged against the respondent (Tr. at 623-675, 803). The respondent on appeal does not otherwise identify a factual allegation that the AO deemed was admitted by operation of 8 C.F.R. § 1003.105(c)(2) that was erroneous, untrue, unsupported by evidence, or that prejudiced her defenses. We cannot conclude that the respondent was denied due process by the AO's decision to deem as admitted all but three of the factual allegations underlying Counts One to Eleven such that would justify reversal of the AO's decision on these Counts as the respondent demands.

The respondent also argues that she was denied due process when the AO permitted testimony concerning acts that were not charged in the NID (Respondent's Br. at 11-12). Specifically, the respondent takes issue with Immigration Judge ("IJ") Thomas O'Leary's testimony concerning her past conduct that preceded those charged in the NID (*id.*). First, our review of the transcript reveals that apart from objecting to the vagueness of Disciplinary Counsel's question regarding the timeframe of the prior conduct, the respondent's counsel did not object to the questions regarding the respondent's prior conduct because it was not charged on the NID (*see, e.g.*, Tr. at 100-105, 110-12). The transcript also reveals that the respondent's own counsel asked IJ O'Leary about the respondent's conduct outside of those alleged in the NID (*see, e.g.*, Tr. at 136-37, 142-45, 151-55, 173, 183). Finally, and significantly, the AO's decision does not indicate that he relied upon uncharged conduct to uphold the disciplinary charges or to impose sanctions. We cannot

4

y

D2017-0363

conclude that questions regarding the respondent's prior conduct that were not objected to, that the respondent's own counsel also asked, and that were not relied upon by the AO in any meaningful fashion in his decision, denied the respondent due process such that would justify a remedy in these disciplinary proceedings.

## IV. DISCIPLINARY CHARGES

As stated by the AO and the parties, the disciplinary charges against the respondent fall into three general categories of alleged violations of the rules of professional conduct (AO at 10-11). Counts One to Eleven pertain to the respondent's filing of Notices of Appeal ("NOA") and her failure to file appeal briefs after indicating an intent do so in the NOA. Counts Twelve to Sixteen, and Count Nineteen, pertain to the respondent's failure to timely file briefs ordered by the Immigration Judge. Counts Seventeen to Eighteen and Counts Twenty to Twenty-Four involve alleged failures to timely file applications for relief from removal or complete biometrics to accompany such applications in proceedings before the Immigration Court.

A. Counts One to Eleven: Appeals before the Board

Counts One to Eleven in the NID involve 11 cases whose appeals were summarily dismissed by the Board because the statements in the NOAs filed by the respondent did not meaningfully apprise the Board of the reasons for the appeal or identify with specificity errors in the Immigration Judge's decisions, and because no appeal briefs were filed despite stating an intent to do so in the NOA. The NID charged that the respondent is subject to discipline under 8 C.F.R. §§ 1003.102(j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (competence), and (q) (failure to act with reasonable diligence and promptness in representing a client).

The AO sustained the charge under 8 C.F.R. § 1003.102(j), finding that the respondent engaged in frivolous behavior by failing to take reasonable efforts to determine if there were any appealable issues before filing the NOAs in Counts One to Nine and Count Eleven (AO at 12-14).[6] The AO sustained the charge under 8 C.F.R. § 1003.102(n), concluding that the respondent's conduct in Counts One to Eleven, prejudiced the administration of justice and undermined the integrity of the adjudicative process (*id.* at 15-18). Finally, the AO sustained the charges under 8 C.F.R. § 1003.102(o) and (q), finding that the respondent's failure to analyze the factual and legal issues before filing an appeal in Counts One to Nine and Count Eleven,[7] and failure to timely apprise the Board of intervening reasons for why the appeal briefs would not be filed or why the appeals were no longer being pursued, evince the respondent's lack of competency and failure to act with reasonable diligence and promptness in representing her clients (*id.* at 18-20).

---

[6] The AO dismissed Count 10 pertaining to the frivolousness charge. This has not been challenged on appeal.

[7] The AO dismissed Count 10 pertaining to the competency charge. This has not been challenged on appeal.

5

D2017-0363

Notwithstanding the respondent's arguments protesting the AO's decision to deem as admitted the factual allegations underlying Counts One to Eleven, the respondent on appeal does not meaningfully dispute these factual allegations. Rather, the respondent indicates on appeal that "there is no dispute in the evidence," that she knew that failing to file a brief could cause the dismissal of an appeal, and that in cases where she failed to file a brief, she deliberately did so because she did not find just cause for the appeal (Respondent's Br. at 4-5). The respondent asserts that the government did not present evidence that the summary dismissal of the appeals caused "substantial infringement of government time, effort, or practice," inconvenience to the court, or prejudice to her clients (*id.* at 9-10).

We affirm the AO's decision to sustain the disciplinary charges under 8 C.F.R. §§ 1003.102(j), (n), (o), and (q), for the reasons set forth therein. The respondent has not identified clearly erroneous findings of fact or legal errors in the AO's analysis of each of the disciplinary charges for Counts One to Eleven. *See Matter of R-S-H-*, 23 I&N Dec. 629, 637 (BIA 2003) ("[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (citation omitted)). The respondent on appeal does not meaningfully challenge the AO's findings and conclusions that she engaged in frivolous behavior (8 C.F.R. § 1003.102(j)), failed to provide competent representation and failed to act with reasonable diligence and promptness (8 C.F.R. § 1003.102(o) and (q)), in her prior appellate practice of filing NOAs without first making reasonable efforts to determine if there were appealable issues, and then after determining later that there were no appealable issues, simply allowed the appeals to be summarily dismissed by not filing a timely appeal brief, a timely explanation for the failure to timely file an appeal brief, or notification that the appeals were no longer being pursued (AO at 12-14, 18-20; *see* Respondent's Br. at 9-11).

While the respondent did not refer to the regulation at issue, the respondent's complaint on appeal that Disciplinary Counsel did not present evidence that the summary dismissal of the appeals caused "substantial infringement of government time, effort, or practice," or additional inconvenience to the Board, appears to bear upon the disciplinary charge under 8 C.F.R. § 1003.102(n), which describes an attorney's engagement in conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process. However, the respondent's frivolous filing of NOAs, and reliance on her inaction and the summary dismissal procedure to manage or dispose of the appeals she filed, caused unnecessary hurdles to the administration of justice, resulting in the needless consumption of resources and time while the appeals were pending before the Board. *See generally, e.g., People v. Layton*, 494 P.3d 693, 726 (Colo. O.P.D.J. 2021) (finding that attorney prejudiced the administration of justice by causing the judiciary staff to spend unnecessary time and resources on a meritless case); *Iowa S. Ct. Atty. Disc. Bd. v. Turner*, 918 N.W.2d 130, 151 (Iowa 2018) (noting that "conduct prejudicial to the administration of justice" includes "conduct that wastes judicial resources," and "ignoring deadlines and orders"); *In re Alcorn*, 41 P.3d 600, 609 (Ariz. 2002), as corrected (Mar. 21, 2002) (noting that "undue waste of court resources is prejudicial to administration of justice) (citation omitted); *see also In re Payne*, 707 F.3d 195, 213, 215 (2d Cir. 2013) (finding that "an appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel,"

6

D2017-0363

and that counsel's intentional default on briefing scheduling orders is conduct prejudicial to the administration of justice).

The respondent's filing of NOAs before reasonably determining whether there were appealable issues, and indicating in those notices that a separate brief would be filed, resulted in the expenditure of resources and time in producing the transcription of the hearing and issuing a briefing schedule (AO at 16-18). The respondent's admitted practice of intentionally not filing the promised brief to force the summary dismissal of the appeal also unnecessarily wasted other resources, where the Board must assess whether it was appropriate to summarily dismiss an appeal because a promised brief was not filed, or to adjudicate the appeal notwithstanding the failure to file the brief, even after the respondent had already privately determined that the appeals will not be pursued (*id.*). *See, e.g., Casas Chavez v. INS*, 300 F.3d 1088, 1090-91 (9th Cir. 2002) (requiring the Board to examine the reasons for the appeal in the NOA and to determine whether it contained the requisite specificity, and if so, to address the merits of the appeal, in spite of the non-citizen's failure to file a brief). The respondent's justification for not filing the promised brief because "she did not, in the end, find a just cause for the appeal," reveal her ongoing erroneous belief that the appellate process begins upon her filing of an appeal brief, rather than with the filing of the NOA (AO at 34; Respondents' Br. at 5, ¶ 19; *see e.g.,* Tr. at 628-30, 637-38, 640-41, 645-48, 658-59, 665, 668, 671-72). *See* 8 C.F.R. § 1003.3(a)(1) (providing that "[a]n appeal from a decision of an immigration judge shall be taken by filing of a Notice of Appeal. . . (Form EOIR-26) directly with the Board"). The respondent did not engage in a singular or isolated act or omission. The respondent's admitted practice of engaging in the conduct at issue in a number of cases, and as a matter of course in her appellate practice, elevated its impact to one that seriously impaired or interfered with the adjudicative process, and clearly and convincingly fell within sanctionable conduct described in 8 C.F.R. § 1003.102(n).

B.  Counts Twelve to Sixteen, and Count Nineteen: Failure to File Court-Ordered Briefs

Counts Twelve to Sixteen, and Count Nineteen, in the NID involve six cases in which the respondent failed to timely file briefs ordered by IJ Sean Keenan. The respondent at the hearing did not dispute the factual allegations underlying these Counts; nor did she dispute that she failed to timely file the court-ordered briefs (*id.* at 20). On appeal, the respondent does not challenge the AO's findings of fact and determination that the respondent's failure to file court-ordered briefs by the court-ordered deadlines in six cases constituted a failure to provide competent representation (8 C.F.R. § 1003.102(o)), and a failure to act with reasonable diligence and promptness (8 C.F.R. § 1003.102(q)) (*id.* at 20-24; Respondent's Br. at 9-11). Again, while not citing to the regulation, the respondent argues that there is no clear and convincing evidence that her failure to file the court-ordered briefs caused any substantial disruption to the administrative process that we interpret refers to 8 C.F.R. § 1003.102(n) and its proscription against conduct that is prejudicial to the administration of justice or that undermines the integrity of the adjudicative process (Respondent's Br. at 10).

The regulations expressly authorize the Immigration Judge to order any party to file a pre-hearing statement of position on any issues relevant to the proceedings. 8 C.F.R. § 1003.21(b). The regulatory history indicates that this authority provides the Immigration Judge with "a specific mechanism to clarify issues, allow for more accurate time scheduling cases, and generally simplify

D2017-0363

and organize the proceedings," as well as assist the Immigration Judge in the presentation and in ultimately deciding a case. Executive Office for Immigration Review; Rules of Procedures, 57 FR 11568-01 (April 6, 1992) (interim rule with request for comments). As found by the AO, and recognized even by the respondent herself, a pre-hearing statement or brief is an "important" tool by which an applicant can best articulate the basis for his or her claim and make a persuasive argument for granting relief (AO at 22; Tr. at 791-93).

Depending on the circumstances, the proper course of action when an Immigration Judge orders the filing of a pre-hearing statement or brief by a specific agreed-upon or consented-to deadline, as authorized by 8 C.F.R. § 1003.21(b), would have been to file the court-ordered brief at the appointed time, provide a timely explanation for the failure (or refusal) to comply, or if all else fails, seek further guidance from the Immigration Judge. We disagree with the respondent's suggestion that doing nothing, or relying on her own unilateral assessment that a brief would be unnecessary or unhelpful, is a reasonable option or response to an Immigration Judge's order. *See generally, e.g., Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'") (citation omitted)). Ignoring the Immigration Judge's order, and letting the deadline lapse without any communication, not only impairs or interferes with the Immigration Judge's ability to adjudicate a case and ill-serves the interests of the respondent's clients, but also undermines the efficacy of the Immigration Court system and engenders disrespect for (and, as here, repeated intentional noncompliance) with Immigration Judges' orders (AO at 22-23). Such an act or omission falls within the regulatory proscription in 8 C.F.R. § 1003.102(n) against conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process. *See generally, e.g., Atty. Grievance Commn. of Maryland v. Collins*, 229 A.3d 171, 179 (Md. 2020) (recognizing that conduct that . . . "engenders disrespect for the court is conduct prejudicial to the administration of justice"); *People v. Efe*, 475 P.3d 620, 640 (Colo. O.P.D.J. 2020) ("Lawyers are essential cogs in the machine of justice. When lawyers refuse to obey court orders, . . . [they] jeopardize the fair and efficient administration of justice."). The AO properly sustained the disciplinary charge under 8 C.F.R. § 1003.102(n), as it relates to Counts Twelve to Sixteen, and Count Nineteen.

C. Counts Seventeen to Eighteen and Counts Twenty to Twenty-Four: Failure to Timely File Applications for Relief from Removal and Comply with Biometric Requirements

Counts Seventeen to Eighteen, and Counts Twenty to Twenty-Four involve cases where the respondent failed to file applications for relief from removal by the court-imposed deadlines, and failed to ensure that her clients complete the biometrics requirement. On appeal, the respondent does not challenge the AO's findings of fact and determination that the respondent's failure to timely file the applications for relief form removal or comply with the biometric requirements constituted a failure to provide competent representation (8 C.F.R. § 1003.102(o)), and a failure to act with reasonable diligence and promptness (8 C.F.R. § 1003.102(q)) (AO at 24-30; Respondent's Br. at 9-11). Rather, the respondent on appeal argues that there is no clear and convincing evidence that that there is "any substantial disruption to the administrative process or any real prejudice to any representative client" (Respondent's Br. at 10).

D2017-0363

The AO, however, properly found that the record evidence clearly and convincingly shows that the respondent's failure to timely file the applications for relief and comply with the biometrics requirement impaired or interfered with the adjudicative process. The respondent on appeal does not meaningfully challenge the AO's findings that her failure to timely file the applications for relief with the Immigration Court, timely comply with the biometrics requirement, or timely notify the Immigration Court of her clients' inability to do so, impeded the Immigration Court's ability to adjudicate her clients' cases, hampered the Immigration Court's ability to schedule and adjudicate other cases that may have been ready to proceed to an individual hearing, and provided the Immigration Court with limited options – continuing the case, bifurcating and then continuing the case, or deeming the applications abandoned – all of which seriously impaired or interfered with the adjudicative process (AO at 25-28). The AO properly sustained the disciplinary charge under 8 C.F.R. § 1003.102(n), as it relates to Counts Seventeen to Eighteen, and Counts Twenty to Twenty-Four.

## V.  SANCTIONS

In the NID, Disciplinary Counsel proposed that a two-year suspension from practice before the Immigration Court and the Board be imposed on the respondent. The AO, however, ruled that suspending the respondent from practice of law before the Immigration Courts, the Board and DHS, for an indefinite period of no less than five years from the issuance of the order, subject to conditions prior to reinstatement, was appropriate. On appeal, the respondent argues that "any sanction which would involve [her] suspension would be unwarranted" because the *pro bono* service she provides is "of a significant benefit to the 'public interest,'" and that she should be judged by her practice today which she claims has greatly improved since receiving more funding and staffing (Respondent's Br. at 10, 12-13). Disciplinary Counsel, on the other hand, asserts on appeal that the AO's departure from its initial proposed sanction, and imposition of an indefinite suspension of no less than five years, is warranted and proper (DC Br. at 7).

As previously discussed, the respondent on appeal largely does not contest the AO's determination that she engaged in frivolous behavior, failed to provide competent representation, and failed to act with reasonable diligence and promptness, as provided in 8 C.F.R. § 1003.102(j), (o), (q). Clear and convincing evidence also shows that the respondent engaged in conduct that prejudiced the administration of justice and undermined the integrity of the adjudicative process, as proscribed in 8 C.F.R. § 1003.102(n). At the hearing and on appeal, the respondent's arguments focused less on what she (through her counsel) admitted as "several problems with representation in the early stages of [her] clinic," or "whether or not [she] did everything correctly or whether or not she may have made violations," and more on whether sanctioning her is in the public interest (Respondent's Br. at 12; *see* Tr. at 92-93). The regulations provide that "it is deemed to be in the public interest for an adjudicating official or the Board to impose disciplinary sanctions against a practitioner who falls within one or more of the categories enumerated in [8 C.F.R. § 1003.102]." *See* 8 C.F.R. §§ 292.3(a)-(b), 1003.101(a), 1003.102. We agree, therefore, with the AO that imposition of disciplinary sanctions is appropriate in the instant case (AO at 31-33).

In determining the kind and degree of sanction to be imposed, we agree with the AO that it is appropriate for adjudicators to consult the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"). At the same time, we emphasize that the ABA Standards

9

D2017-0363

provide a theoretical framework or guideline, with flexibility for the adjudicator to select the appropriate sanction, depending on the specific facts of a given case. *See Matter of Gupta*, 28 I&N Dec. 653, 657 (BIA 2022) (noting that while the Board is not bound by the ABA Standards, they are persuasive on the issue of determining the propriety of sanctions imposed). In determining the appropriate sanction, we are also mindful that the primary purpose of any discipline imposed is to serve the public interest, and not to punish the attorney. *See* 8 C.F.R. §§ 292.3(a)(1), 1003.102; *see generally Matter of Solomon*, 16 I&N Dec. 388, 408 (BIA 1977; A.G. 1977) (Appleman, concurring).

While we accord respectful consideration to the AO's findings and conclusions, we review the AO's conclusions of law, judgment and discretion de novo. 8 C.F.R. §§ 1003.1(d)(3)(ii), 1003.106(c). The Board has the authority to modify the sanction initially ordered by the AO if warranted. *See Matter of Gadda*, 23 I&N Dec. 645, 650 (BIA 2003), as amended (holding that the Board has authority to increase the level of disciplinary sanction initially imposed by an adjudicating official against an attorney).

Consistent with ABA Standards 3.0, the AO properly found that the factors to be considered in determining the proper sanction are the duty violated; the lawyer's mental state; the potential or actual injury caused by the lawyer's misconduct; and the existence of aggravating or mitigating factors (AO at 32). *See* ABA Standards 3.0 (2019). As found by the AO, and discussed above, the respondent violated her duties to her clients and to the legal system by failing to provide competent and reasonably diligent representation, by engaging in frivolous behavior, and by engaging in conduct that prejudiced the administration of justice and undermined the integrity of the adjudicative process (AO at 32-34). The AO remarked that while some of the respondent's misconduct appeared reckless or negligent, most involved intentional or knowing disregard of her duty as a practitioner and her obligation to comply with court-ordered deadlines (*id.* at 34-35; Tr. at 605-606, 608-609). The respondent on appeal does not contest the AO's findings in this regard (Respondent's Br. at 1-6, 9-11). The respondent likewise does not contest on appeal the AO's findings that her actions or omissions resulted in actual or potential injury to her clients, some of whom has had their applications denied as abandoned, and to the legal system, in filing frivolous appeals, failing to file appeal briefs, and in failing to comply with court-ordered deadlines and filings (AO at 35-36; Respondent's Br. at 1-13).

The ABA Standards, Board cases, and attorney discipline state cases, indicate that in cases involving multiple charges of misconduct and violations of a similar nature as present here, the presumptive sanction has generally been suspension. *See, e.g., Matter of Singh*, 26 I&N Dec. 623 (BIA 2015) (ordering a 16-month suspension for attorney who, inter alia, engaged in conduct prejudicial to the administration of justice in 16 immigration cases for a number of years); *Matter of De Anda*, 17 I&N Dec. 54 (BIA 1979; AG 1979) (ordering a 6-month suspension for attorney who, inter alia, repeatedly failed to file the application for relief and engaged in conduct that obstructed the orderly and timely administration of the immigration laws).[8] We are unpersuaded

---

[8] *See also generally In re Nwaneri*, 978 N.W.2d 878 (Minn. 2022) (ordering 90-day suspension, and two years of supervised probation following reinstatement, for immigration attorney who failed to ensure a client obtained biometrics information before hearing on relief); *Att'y Grievance Comm'n of Maryland v. Taniform*, 286 A.3d 1072, 1079 (Md. 2022) (ordering indefinite suspension with right to apply for reinstatement after 18 months ordered for immigration attorney

D2017-0363

by the respondent's entreaty that she should not be subject to any sanction involving suspension because it does not serve the "public interest" to deprive the "community [o]f her [pro bono] services" (Respondent's Br. at 5, ¶21). The respondent's assertion in this regard reveals a narrow view of what is in the public interest and the purpose for imposing sanctions in disciplinary proceedings, which is to protect the public, preserve the integrity of the immigration courts and the legal profession, and maintain high professional standards by practitioners, by, inter alia, deterring professional misconduct. *See* Professional Conduct for Practitioners – Rules and Procedures, 65 Fed. Reg. 39513-01, 39514 (June 27, 2000); Professional Conduct for Practitioners -- Rules and Procedures, and Representation and Appearances, 73 FR 76914-01, 76915 (Dec. 18, 2008). The respondent cannot be exempt from sanctions for her misconduct solely because she provides a service to the community, as the community she serves deserves the same level of competence and professionalism as any other legal client.

To further determine the proper sanction to impose, the AO properly considered and weighed the aggravating and mitigating factors presented that may justify an increase or decrease in the degree of discipline imposed. *See* ABA Standards 9.1; *Matter of Singh*, 26 I&N Dec. at 625 (noting the careful weighing of aggravating and mitigating factors in determining whether and what sanctions should be imposed). In the instant case, the AO considered the following as aggravating factors: (1) the pattern of misconduct occurring over a period of approximately two years; (2) multiple and repeated violations of the professional code of conduct; (3) the respondent's refusal to acknowledge her misconduct; (4) her substantial experience in the practice of law, particularly immigration law; and (5) prior warnings from Disciplinary Counsel (AO at 36-37). The AO then considered the following as mitigating factors: (1) absence of a formal prior disciplinary record; (2) her reputation; (3) her creation of a pro bono clinic to assist those in immigration proceedings who cannot afford private counsel (*id.* at 37). The AO ultimately found that aggravating factors far outweighed the mitigating factors, and, likewise considering that the most serious charge of misconduct involved the respondent's 'total abandonment' of her "clients in their most desperate time of need," determined that the appropriate sanction is an indefinite suspension for a period of no less than five years, and with her reinstatement conditioned upon a showing of rehabilitation and "changes she has made in the pro bono clinic to ensure these violations will never happen again" (*id.* at 38, 41-43).

We agree with the AO that the cumulative nature of the respondent's misconduct, the injury or potential injury her misconduct had and could have to her vulnerable clients, and the susceptibility of repetition of the misconduct, demands the imposition of a serious sanction of suspension. We note, however, that the AO's imposed sanction of "indefinite suspension, but for no less than five years," with no right to apply for reinstatement for five years, is a sanction that exceeds the three-year maximum recommended by the ABA, and exceeds the conditions provided in the regulations which permit a suspended attorney (and even a disbarred attorney) to apply for early reinstatement

---

who, inter alia, failed to provide competent representation and act with reasonable diligence and promptness in representing client); *see also* ABA Standards 4.42 (suspension appropriate when lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client), 6.22 (suspension appropriate when lawyer knows he or she is violating a court order or rule and causes injury or potential injury to a client, or potential interference with a legal proceeding) (2019).

D2017-0363

after one-half of the suspension period has expired or after one year has passed, whichever is greater. *See* ABA Standards 2.3 (2019); 8 C.F.R. § 1003.107(b)(1). The sanction also is in the higher end of the range of suspension periods that the Board has imposed or upheld in prior published cases that involved more egregious conduct, or conduct involving fraud, misrepresentation or deception, prior discipline orders, or state bar disbarments, none of which are present in this case. *Cf. e.g., Matter of Singh*, 26 I&N Dec. at 626 (16-month suspension for attorney who, inter alia, engaged in conduct prejudicial to the administration of justice by enlisting a legal assistant to impersonate him during telephonic appearances in 16 immigration cases for a number of years); *Matter of Kronengold*, 15 I&N Dec. 157 (BIA 2010) (7-year suspension for attorney who was disbarred in New York where the attorney is permitted to seek reinstatement after 7 years); *Matter of Sparrow*, 20 I&N Dec. 920 (BIA 1994) (10-year suspension for attorney with a conviction which involved a conspiracy to violate immigration laws through a sham marriage scheme, making false statements to the Immigration and Naturalization Service, suborning perjury, and stealing government property, among other things). While we may consider other cases in determining the propriety of sanctions to be imposed, we are cognizant that each case must be assessed on its own facts and circumstances, with its varying rule violations, mitigating and aggravating factors, and unique fact patterns.

In weighing the aggravating and mitigating factors, the AO gave great adverse weight to the respondent's perceived failure to take responsibility for her actions or to acknowledge that she made mistakes in her practice before the Board and Immigration Courts (AO at 38-41). Like the AO, we find concerning the respondent's tendency to blame others, like her clients or the immigration court system, for her actions or inactions, where she, as the primary attorney of record, was tasked to know the pertinent facts in a given case, the proper and timely course of conduct according to those facts and circumstances, and to seek a remedy or guidance if faced with obstacles or uncertainty as to the proper course of conduct (*id.* at 38-39). For instance, it is no defense to a charge of incompetency or lack of diligence that the respondent acquiesced or permitted to occur what she described as repeated errors by a client's husband in the filing of a visa petition that caused numerous continuances and year-long delay in proceedings, errors which she insisted she only learned about "after the fact," despite being the primary attorney of record (AO at 28; Tr. at 242-246, 719-21, 759-62). Likewise, it is no justification or defense to the disciplinary charges that a pro bono liaison Immigration Judge did not regularly meet with the respondent, an experienced attorney, to discuss improving the level or quality of her representation of her clients (Tr. at 141, 266-69, 282, 822).

However, while true that the respondent's refusal to expressly acknowledge or accept her errors before the AO -- whether it be as a legal strategy or otherwise -- appears to evince a lack of remorse or ability to accept responsibility, the record also contains some evidence that the respondent had taken steps to attempt to rectify the failings in the management of her pro bono clinic, including the respondent's admission that she has "not failed to file a brief," since being informed by Disciplinary Counsel of the complaints underlying the instant disciplinary proceedings (AO at 40; *see e.g.,* Tr. at 323-331, 610-612, 614-615). IJ O'Leary, who had initially filed complaints alerting Disciplinary Counsel of the respondent's problematic conduct, testified that he does not know of any instances since the complaints were filed where the respondent engaged in inappropriate conduct (Tr. at 183). The respondent's efforts in this regard reveal an acknowledgement of the errors or mistakes in her previous process and practice, even if she has

12

D2017-0363

not expressly done so in words, and even if the AO questioned the lasting success of the respondent's newly implemented case management system and other efforts (AO at 40). We assign some mitigating weight to the respondent's actions before and during the pendency of her disciplinary proceedings as an acknowledgement of, and regret for, her errors and misconduct.

The apparent absence of a dishonest or selfish motive in the instant case is also a mitigating factor that warrants some consideration. *See* ABA Standards 9.32(b) (2019). The respondent has established and maintained an organization that is dedicated to providing pro bono legal assistance and representation for noncitizens in immigration proceedings since 2011, and the noncitizens whose cases are the subject of the charges against the respondent are clients of the respondent's pro bono clinic (AO at 37; Tr. at 602-604). While a violation is no less impactful simply because the legal services rendered are free, the AO should have considered as a mitigating factor the lack of any indication that the respondent's misconduct was committed to profit at the expense of her clients, or for a dishonest purpose, or was based on corrupt motives.

On the other hand, we do agree with the AO that the respondent's pattern of misconduct and experience in the practice of law, particularly immigration law, are aggravating factors that carry substantial weight. As to the latter, the respondent testified that she graduated from law school in 1985, and since that time served in various legal capacities, including starting the non-profit organization Keep Tucson Together ("KTT") in 2011, managing the organization and serving as the primary attorney for all of the organization's clients, while also serving as a full-time Pima County Public Defender, a position she has held for more than 17 years (Tr. at 99, 331-33, 393-95, 4-84, 601-02). The respondent also testified that she has led continuing legal education sessions for volunteer lawyers that covered "all sorts of aspects of the law and procedure and applications," and general information about immigration court practice (Tr. at 619). The respondent presented witnesses who testified to the respondent's lauded reputation in her criminal law practice untainted by reports of missed deadlines, frivolous appeals, failure to file appellate briefs, or failure to file court-ordered briefs and applications, that plagued her practice before the immigration courts and the Board (AO at 37; *see, e.g.*, Tr. at 477-79, 485-88, 563-66, 574-77). The respondent's substantial experience is an aggravating factor because it indicated that she knew the importance of complying with deadlines, court orders and other obligations to her clients in her practice before the criminal courts but was not inclined to give the same consideration to the Immigration Judges, the Board, and her clients in removal proceedings. *See* ABA Standards 9.22(i) (2019).

The vulnerability of the respondent's clients who are in removal proceedings is another aggravating factor to be considered. *See* ABA Standards 9.22(h) (2019). As testified to by the respondent, the individuals who are screened and accepted as clients by the KTT are often poor and are focused more on day-to-day survival than on appointments and assisting in their legal cases (Tr. at 608, 739). With this understanding of her clients' circumstances, we agree with the AO that the respondent's attempt at deflecting responsibility to her clients -- for instance, in the filing of appeals when the respondent had "no idea what the record was," for failing to timely respond to an Immigration Judge's order to file prehearing briefs by the deadline set, or for failing to timely respond to an Immigration Judge's order to file applications for relief or biometrics by the deadline set -- is unavailing (AO at 35, 38; *see, e.g.*, Tr. at 647-48, 694-98, 703-05, 707-23, 731-37, 755-76).

13

D2017-0363

After considering and balancing all relevant factors, including aggravating and mitigating factors, ABA Standards recommendations and case guidance, we conclude that a suspension period of two years, as originally proposed by Disciplinary Counsel, with leave to seek early reinstatement as provided in 8 C.F.R. § 1003.107(b)(1) after one-half of the suspension period has expired, would serve the pvurpose of deterring future misconduct, preserving the integrity of the legal system, and protecting the public. While the respondent's cumulative misconduct is significant and serious, it did not warrant the severe sanction imposed that had equal or worse repercussions for the respondent's immigration law practice than disbarment, which is a sanction generally reserved for egregious or grievous acts of professional or ethical misconduct (such as those involving criminal, fraudulent or malicious acts that result in serious injury to another or that severely compromised the integrity of the legal system). We otherwise adopt the additional conditions to reinstatement ordered by the AO that include the respondent providing an affidavit, under oath, explaining the changes made in the pro bono clinic to ensure the violations at issue would not occur (AO at 41). The following orders will be entered.

ORDER: The Board's decision dated July 5, 2023, is vacated.

FURTHER ORDER: The respondent's appeal is dismissed, and she is suspended from practice before the Board of Immigration Appeals, the Immigration Courts, and DHS for a period of two years, effective 15 days from the date of this order, pursuant to 8 C.F.R. § 1003.106(c).

FURTHER ORDER: The respondent may petition the Board for reinstatement to practice pursuant to the requirements set forth in 8 C.F.R. § 1003.107(b), and the additional condition set forth in this order.

FURTHER ORDER: The respondent is directed to promptly notify, in writing, any clients with cases currently pending before the Board, the Immigration Courts, or DHS that she has been suspended from practicing before these authorities.

FURTHER ORDER: The respondent shall maintain records to evidence compliance with this order.

FURTHER ORDER: The Board directs that the contents of this notice be made available to the public, including at Immigration Courts and appropriate offices of DHS.