# EXHIBIT 3

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Mary M. COWAN, D2017-0363

Respondent

> **FILED**
>
> JUL 0 7 2023

ON BEHALF OF RESPONDENT: William G. Walker, Esquire

ON BEHALF OF EOIR:  Paul A. Rodrigues, Disciplinary Counsel
Casey L. Martinez, Associate General Counsel

ON BEHALF OF DHS:  Toinette M. Mitchell, Disciplinary Counsel

IN PRACTITIONER DISCIPLINARY PROCEEDINGS
On Appeal from the Decision of the Adjudicating Official

Before: Malphrus, Deputy Chief Appellate Immigration Judge; Liebowitz, Appellate
Immigration Judge; Brown, Temporary Appellate Immigration Judge[1]

Opinion by Brown, Temporary Appellate Immigration Judge

BROWN, Temporary Appellate Immigration Judge

**AMENDED DECISION[2]**

In a December 8, 2020, decision, the Adjudicating Official ("AO") found that the Disciplinary Counsel for the Executive Office for Immigration Review ("EOIR") has met its burden of establishing the factual allegations and disciplinary charges in the Notice of Intent to Discipline, and ordered that the respondent be suspended from the practice before the Immigration Courts, Board of Immigration Appeals ("Board"), and the Department of Homeland Security ("DHS"), for an indefinite period of no less than five years, with conditions for reinstatement.  The respondent

---

[1]  Temporary Appellate Immigration Judges sit pursuant to appointment by the Attorney General.
*See* 8 C.F.R. § 1003.1(a)(4)

[2]  The instant amended decision is issued only to correct the Appellate Immigration Judge information in the caption.

D2017-0363

timely appeals this decision. Disciplinary Counsel has requested that the AO's decision be affirmed. The respondent's appeal will be dismissed. For the reasons set forth below, the respondent is ordered suspended from practice for a period of two years.

## I.   PROCEDURAL HISTORY

The respondent is an attorney licensed to practice law in the State of Arizona.[3]   On August 15, 2019, Disciplinary Counsel initiated these disciplinary proceedings with the filing of a Notice of Intent to Discipline ("NID") and sought to have the respondent suspended from practice before the BIA and the Immigration Courts for a period of two years. The Disciplinary Counsel for DHS subsequently requested that the respondent be similarly suspended from practice before that agency.[4]   The NID contended, in 24 Counts, that the respondent is subject to discipline under 8 C.F.R. §§ 1003.102 (j) (frivolous behavior); (n) (conduct prejudicial to the administration of justice); (o) (competence) and (q) (failure to act with reasonable diligence and promptness in representing a client). The respondent filed a timely answer to the NID and requested a hearing, which was granted by the Board in an October 31, 2019, decision.

On May 15, 2020, the AO held a pre-hearing conference where the respondent raised a number of issues that included a request that the AO recuse himself. On June 8, 2020, the AO denied the respondent's motion for recusal. On September 3, 2020, the AO issued a decision granting in part, and denying in part, the DC's Motion to Deem Factual Allegations as Admitted, and deemed as admitted all but five of the factual allegations. On September 8, 2020, the AO held a second pre-hearing conference where he ruled on several motions pertaining to testimony of the respondent's witnesses, length of briefs, and appearances via video teleconference ("VTC"). A five-day disciplinary hearing was held from September 21, 2020, to September 25, 2020. On December 8, 2020, the AO issued a decision dismissing Count 10 charge relating to violations of 8 C.F.R. §§ 1003.102(j) (frivolous behavior), 1003.102(o) (competency), but upholding all remaining counts and charged violations. The AO sanctioned the respondent to an indefinite period of suspension of no less than five years, with permission to seek reinstatement after five years. The AO ordered that when seeking reinstatement, the respondent must file an affidavit, under oath, explaining the changes she has made to her practice to ensure the violations at issue in the disciplinary proceedings are not repeated.

The respondent timely appealed the AO decision. On August 11, 2021, the respondent filed a brief in support of her appeal. On September 9, 2021, DC submitted a brief in response to the appeal requesting that the AO's decision be affirmed, and the suspension order made effective.

---

[3] The AO noted that the respondent is in inactive-retired status in the Commonwealth of Pennsylvania (AO at 2 n.2).

[4] The AO granted the DHS's motion requesting reciprocal discipline for the respondent's appearances before DHS (AO at 2, n.3). *See* 8 C.F.R. § 1003.105(b).

D2017-0363

## II.    ISSUES AND STANDARD OF REVIEW

We review the AO's findings of fact for clear error. 8 C.F.R. §§ 1003.1(d)(3)(i); 1003.106(c). We review questions of law, discretion and judgment, and all other issues in appeals, de novo. 8 C.F.R. §§ 1003.1(d)(3)(ii), 1003.106(c); *Matter of Kronegold*, 25 I&N Dec. 157, 159-60 (BIA 2010). In disciplinary proceedings, Disciplinary Counsel "shall bear the burden of proving the grounds for disciplinary sanctions enumerated in the [NID] by clear and convincing evidence." 8 C.F.R. § 1003.106(a)(2)(iv).

The respondent on appeal lodges various arguments challenging the AO's decision, contending, among other things, that she was denied due process, that the evidence introduced by the government "established only past problems with [her] representation" that have "since been substantially corrected," and that given the totality of the facts in her case, "any sanction involving [her] suspension would be unwarranted" (Respondent's Br. at 6-13). The government argues that the AO's findings as to the factual allegations, the disciplinary charges, and the sanction imposed were supported and warranted by the clear and convincing evidence in the record (Disciplinary Counsels ("DC") Br. at 3).

## III.    DUE PROCESS

The respondent first argues that she was denied due process of law when the AO granted, in part, Disciplinary Counsel's Motion to Deem Factual Allegations as Admitted, and considered as admitted most of the factual allegations underlying the "first 11 counts" in the NID that the AO found that the respondent did not specifically deny in her answer to the NID pursuant to 8 C.F.R. § 1003.105(c)(1)-(2) (Respondent's Br. at 7-9; *see* Exh. 11 at 4-9). We find no due process violation in the AO's decision to deem as admitted all but three (Exh. 1, ¶¶ 11, 12, 13) of the factual allegations underlying Counts One to Eleven in the NID. [5]

At the outset, we note that the AO's decision granting Disciplinary Counsels' motion clearly distinguished the factual allegations from the disciplinary charges underlying each Count (Exh. 11 at 6). As found by the AO, while the respondent indubitably denied the disciplinary charges against her in her answer to the NID, she did not specifically deny the factual allegations underlying the disciplinary charges (*id.*). The respondent on appeal appears to continue to conflate the factual allegations with the disciplinary charges (Respondent's Br. at 8-9). For the sake of clarity, we underscore that the AO did not deem as admitted the disciplinary charges against the

---

[5] The respondent on appeal does not otherwise challenge the factual allegations underlying "the first 11 counts" that the AO found the respondent *did* specifically deny but which the AO ultimately sustained as proven by clear and convincing evidence (AO at 8-10; *see* Exh. 1, ¶¶ 11, 12, 13; Respondent's Br. at 7-9). The respondent also does not challenge on appeal the AO's decision to deem as admitted the factual allegations underlying Counts Twelve to Twenty-Four in the NID (Respondent's Br. at 7-9). The respondent has waived appeal of these issues. *See, e.g., Matter of A.J. Valdez and Z. Valdez*, 27 I&N Dec. 496, 496 n.1, 498 n.3 (BIA 2018) (noting that an issue addressed in an Immigration Judge's decision is waived when a party does not challenge it on appeal).

000004

D2017-0363

respondent in Counts One to Eleven; rather the AO deemed as admitted most of the factual allegations (except for Exh.1, ¶¶ 11, 12, 13) underlying Counts One to Eleven.

The respondent argues on appeal that "[t]here is no statutory mechanism by which the government should have been able to have such allegations admitted without the right of Respondent to challenge them at the hearing if it is not a summary proceeding" (Respondent's Br. at 8-9). As properly found by the AO, 8 C.F.R. § 1003.105(c)(2) expressly and specifically contemplates the deemed admission of allegations that are not specifically denied in the answer to the NID (Exh. 11 at 6-7). Notably, the respondent on appeal does not address this regulation (Respondent's Br. at 7-9). There is otherwise nothing in 8 C.F.R. § 1003.105(c)(2) that precludes its applicability in disciplinary hearings, or conversely, that its applicability is limited only to summary disciplinary proceedings. We conclude that the AO properly determined that 8 C.F.R. § 1003.105(c)(2) authorizes him to deem as admitted factual allegations that the respondent did not specifically deny in her answer to the NID.

The respondent also asserts on appeal that because of the AO's ruling that deemed as admitted the factual allegations, she was prevented from exploring the facts behind each of the allegations, prevented from challenging the allegations, and materially prejudiced her defense of the first 11 Counts of the NID (*id.* at 7-9). The respondent argues that as a consequence, the AO's decision concerning these first 11 Counts should be reversed (*id.* at 9). The respondent's arguments are unavailing.

The transcript shows that while the AO deemed as admitted most of the factual allegations underlying Counts One to Eleven, the respondent's counsel was fully accorded and took the opportunity to explore with the respondent, at length, the circumstances underlying each of the factual allegations in Counts One to Eleven (i.e., in the AO's words, "to elucidate why she did what she did"), to defend the respondent's actions, and to dispute the disciplinary charges under 8 C.F.R. § 1003.102 (j), (n), (o), and (q), that were lodged against the respondent (Tr. at 623-675, 803). The respondent on appeal does not otherwise identify a factual allegation that the AO deemed was admitted by operation of 8 C.F.R. § 1003.105(c)(2) that was erroneous, untrue, unsupported by evidence, or that prejudiced her defenses. We cannot conclude that the respondent was denied due process by the AO's decision to deem as admitted all but three of the factual allegations underlying Counts One to Eleven such that would justify reversal of the AO's decision on these Counts as the respondent demands.

The respondent also argues that she was denied due process when the AO permitted testimony concerning acts that were not charged in the NID (Respondent's Br. at 11-12). Specifically, the respondent takes issue with Immigration Judge ("IJ") Thomas O'Leary's testimony concerning her past conduct that preceded those charged in the NID (*id.*). First, our review of the transcript reveals that apart from objecting to the vagueness of Disciplinary Counsel's question regarding the timeframe of the prior conduct, the respondent's counsel did not object to the questions regarding the respondent's prior conduct because it was not charged on the NID (*see, e.g.,* Tr. at 100-105, 110-12). The transcript also reveals that the respondent's own counsel asked IJ O'Leary about the respondent's conduct outside of those alleged in the NID (*see, e.g.,* Tr. at 136-37, 142-45, 151-55, 173, 183). Finally, and significantly, the AO's decision does not indicate that he relied upon uncharged conduct to uphold the disciplinary charges or to impose sanctions. We cannot

4

D2017-0363

conclude that questions regarding the respondent's prior conduct that were not objected to, that the respondent's own counsel also asked, and that were not relied upon by the AO in any meaningful fashion in his decision, denied the respondent due process such that would justify a remedy in these disciplinary proceedings.

## IV.    DISCIPLINARY CHARGES

As stated by the AO and the parties, the disciplinary charges against the respondent fall into three general categories of alleged violations of the rules of professional conduct (AO at 10-11). Counts One to Eleven pertain to the respondent's filing of Notices of Appeal ("NOA") and her failure to file appeal briefs after indicating an intent do so in the NOA. Counts Twelve to Sixteen, and Count Nineteen, pertain to the respondent's failure to timely file briefs ordered by the Immigration Judge. Counts Seventeen to Eighteen and Counts Twenty to Twenty-Four involve alleged failures to timely file applications for relief from removal or complete biometrics to accompany such applications in proceedings before the Immigration Court.

A.    Counts One to Eleven:  Appeals before the Board

Counts One to Eleven in the NID involve 11 cases whose appeals were summarily dismissed by the Board because the statements in the NOAs filed by the respondent did not meaningfully apprise the Board of the reasons for the appeal or identify with specificity errors in the Immigration Judge's decisions, and because no appeal briefs were filed despite stating an intent to do so in the NOA. The NID charged that the respondent is subject to discipline under 8 C.F.R. §§ 1003.102(j) (frivolous behavior), (n) (conduct prejudicial to the administration of justice), (o) (competence), and (q) (failure to act with reasonable diligence and promptness in representing a client).

The AO sustained the charge under 8 C.F.R. § 1003.102(j), finding that the respondent engaged in frivolous behavior by failing to take reasonable efforts to determine if there were any appealable issues before filing the NOAs in Counts One to Nine and Count Eleven (AO at 12-14).[6] The AO sustained the charge under 8 C.F.R. § 1003.102(n), concluding that the respondent's conduct in Counts One to Eleven, prejudiced the administration of justice and undermined the integrity of the adjudicative process (*id.* at 15-18). Finally, the AO sustained the charges under 8 C.F.R. § 1003.102(o) and (q), finding that the respondent's failure to analyze the factual and legal issues before filing an appeal in Counts One to Nine and Count Eleven,[7] and failure to timely apprise the Board of intervening reasons for why the appeal briefs would not be filed or why the appeals were no longer being pursued, evince the respondent's lack of competency and failure to act with reasonable diligence and promptness in representing her clients (*id.* at 18-20).

---

[6]  The AO dismissed Count 10 pertaining to the frivolousness charge. This has not been challenged on appeal.

[7]  The AO dismissed Count 10 pertaining to the competency charge. This has not been challenged on appeal.

D2017-0363

Notwithstanding the respondent's arguments protesting the AO's decision to deem as admitted the factual allegations underlying Counts One to Eleven, the respondent on appeal does not meaningfully dispute these factual allegations. Rather, the respondent indicates on appeal that "there is no dispute in the evidence," that she knew that failing to file a brief could cause the dismissal of an appeal, and that in cases where she failed to file a brief, she deliberately did so because she did not find just cause for the appeal (Respondent's Br. at 4-5). The respondent asserts that the government did not present evidence that the summary dismissal of the appeals caused "substantial infringement of government time, effort, or practice," inconvenience to the court, or prejudice to her clients (*id.* at 9-10).

We affirm the AO's decision to sustain the disciplinary charges under 8 C.F.R. §§ 1003.102(j), (n), (o), and (q), for the reasons set forth therein. The respondent has not identified clearly erroneous findings of fact or legal errors in the AO's analysis of each of the disciplinary charges for Counts One to Eleven. *See Matter of R-S-H-*, 23 I&N Dec. 629, 637 (BIA 2003) ("[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (citation omitted)). The respondent on appeal does not meaningfully challenge the AO's findings and conclusions that she engaged in frivolous behavior (8 C.F.R. § 1003.102(j)), failed to provide competent representation and failed to act with reasonable diligence and promptness (8 C.F.R. § 1003.102(o) and (q)), in her prior appellate practice of filing NOAs without first making reasonable efforts to determine if there were appealable issues, and then after determining later that there were no appealable issues, simply allowed the appeals to be summarily dismissed by not filing a timely appeal brief, a timely explanation for the failure to timely file an appeal brief, or notification that the appeals were no longer being pursued (AO at 12-14, 18-20; *see* Respondent's Br. at 9-11).

While the respondent did not refer to the regulation at issue, the respondent's complaint on appeal that Disciplinary Counsel did not present evidence that the summary dismissal of the appeals caused "substantial infringement of government time, effort, or practice," or additional inconvenience to the Board, appears to bear upon the disciplinary charge under 8 C.F.R. § 1003.102(n), which describes an attorney's engagement in conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process. However, the respondent's frivolous filing of NOAs, and reliance on her inaction and the summary dismissal procedure to manage or dispose of the appeals she filed, caused unnecessary hurdles to the administration of justice, resulting in the needless consumption of resources and time while the appeals were pending before the Board. *See generally, e.g., People v. Layton*, 494 P.3d 693, 726 (Colo. O.P.D.J. 2021) (finding that attorney prejudiced the administration of justice by causing the judiciary staff to spend unnecessary time and resources on a meritless case); *Iowa S. Ct. Atty. Disc. Bd. v. Turner*, 918 N.W.2d 130, 151 (Iowa 2018) (noting that "conduct prejudicial to the administration of justice" includes "conduct that wastes judicial resources," and "ignoring deadlines and orders"); *In re Alcorn*, 41 P.3d 600, 609 (Ariz. 2002), as corrected (Mar. 21, 2002) (noting that "undue waste of court resources is prejudicial to administration of justice) (citation omitted); *see also In re Payne*, 707 F.3d 195, 213, 215 (2d Cir. 2013) (finding that "an appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel,"

6

D2017-0363

and that counsel's intentional default on briefing scheduling orders is conduct prejudicial to the administration of justice).

The respondent's filing of NOAs before reasonably determining whether there were appealable issues, and indicating in those notices that a separate brief would be filed, resulted in the expenditure of resources and time in producing the transcription of the hearing and issuing a briefing schedule (AO at 16-18). The respondent's admitted practice of intentionally not filing the promised brief to force the summary dismissal of the appeal also unnecessarily wasted other resources, where the Board must assess whether it was appropriate to summarily dismiss an appeal because a promised brief was not filed, or to adjudicate the appeal notwithstanding the failure to file the brief, even after the respondent had already privately determined that the appeals will not be pursued (*id.*). *See, e.g., Casas Chavez v. INS*, 300 F.3d 1088, 1090-91 (9th Cir. 2002) (requiring the Board to examine the reasons for the appeal in the NOA and to determine whether it contained the requisite specificity, and if so, to address the merits of the appeal, in spite of the non-citizen's failure to file a brief). The respondent's justification for not filing the promised brief because "she did not, in the end, find a just cause for the appeal," reveal her ongoing erroneous belief that the appellate process begins upon her filing of an appeal brief, rather than with the filing of the NOA (AO at 34; Respondents' Br. at 5, ¶ 19; *see e.g.,* Tr. at 628-30, 637-38, 640-41, 645-48, 658-59, 665, 668, 671-72). *See* 8 C.F.R. § 1003.3(a)(1) (providing that "[a]n appeal from a decision of an immigration judge shall be taken by filing of a Notice of Appeal. . . (Form EOIR-26) directly with the Board"). The respondent did not engage in a singular or isolated act or omission. The respondent's admitted practice of engaging in the conduct at issue in a number of cases, and as a matter of course in her appellate practice, elevated its impact to one that seriously impaired or interfered with the adjudicative process, and clearly and convincingly fell within sanctionable conduct described in 8 C.F.R. § 1003.102(n).

B.   Counts Twelve to Sixteen, and Count Nineteen:   Failure to File Court-Ordered Briefs

Counts Twelve to Sixteen, and Count Nineteen, in the NID involve six cases in which the respondent failed to timely file briefs ordered by IJ Sean Keenan. The respondent at the hearing did not dispute the factual allegations underlying these Counts; nor did she dispute that she failed to timely file the court-ordered briefs (*id.* at 20). On appeal, the respondent does not challenge the AO's findings of fact and determination that the respondent's failure to file court-ordered briefs by the court-ordered deadlines in six cases constituted a failure to provide competent representation (8 C.F.R. § 1003.102(o)), and a failure to act with reasonable diligence and promptness (8 C.F.R. § 1003.102(q)) (*id.* at 20-24; Respondent's Br. at 9-11). Again, while not citing to the regulation, the respondent argues that there is no clear and convincing evidence that her failure to file the court-ordered briefs caused any substantial disruption to the administrative process that we interpret refers to 8 C.F.R. § 1003.102(n) and its proscription against conduct that is prejudicial to the administration of justice or that undermines the integrity of the adjudicative process (Respondent's Br. at 10).

The regulations expressly authorize the Immigration Judge to order any party to file a pre-hearing statement of position on any issues relevant to the proceedings. 8 C.F.R. § 1003.21(b). The regulatory history indicates that this authority provides the Immigration Judge with "a specific mechanism to clarify issues, allow for more accurate time scheduling cases, and generally simplify

D2017-0363

and organize the proceedings," as well as assist the Immigration Judge in the presentation and in ultimately deciding a case. Executive Office for Immigration Review; Rules of Procedures, 57 FR 11568-01 (April 6, 1992) (interim rule with request for comments). As found by the AO, and recognized even by the respondent herself, a pre-hearing statement or brief is an "important" tool by which an applicant can best articulate the basis for his or her claim and make a persuasive argument for granting relief (AO at 22; Tr. at 791-93).

Depending on the circumstances, the proper course of action when an Immigration Judge orders the filing of a pre-hearing statement or brief by a specific agreed-upon or consented-to deadline, as authorized by 8 C.F.R. § 1003.21(b), would have been to file the court-ordered brief at the appointed time, provide a timely explanation for the failure (or refusal) to comply, or if all else fails, seek further guidance from the Immigration Judge. We disagree with the respondent's suggestion that doing nothing, or relying on her own unilateral assessment that a brief would be unnecessary or unhelpful, is a reasonable option or response to an Immigration Judge's order. *See generally, e.g., Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("The orderly and expeditious administration of justice by the courts requires that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'") (citation omitted)). Ignoring the Immigration Judge's order, and letting the deadline lapse without any communication, not only impairs or interferes with the Immigration Judge's ability to adjudicate a case and ill-serves the interests of the respondent's clients, but also undermines the efficacy of the Immigration Court system and engenders disrespect for (and, as here, repeated intentional noncompliance) with Immigration Judges' orders (AO at 22-23). Such an act or omission falls within the regulatory proscription in 8 C.F.R. § 1003.102(n) against conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process. *See generally, e.g., Atty. Grievance Commn. of Maryland v. Collins*, 229 A.3d 171, 179 (Md. 2020) (recognizing that conduct that . . . "engenders disrespect for the court is conduct prejudicial to the administration of justice"); *People v. Efe*, 475 P.3d 620, 640 (Colo. O.P.D.J. 2020) ("Lawyers are essential cogs in the machine of justice. When lawyers refuse to obey court orders, . . . [they] jeopardize the fair and efficient administration of justice."). The AO properly sustained the disciplinary charge under 8 C.F.R. § 1003.102(n), as it relates to Counts Twelve to Sixteen, and Count Nineteen.

## C. Counts Seventeen to Eighteen and Counts Twenty to Twenty-Four: Failure to Timely File Applications for Relief from Removal and Comply with Biometric Requirements

Counts Seventeen to Eighteen, and Counts Twenty to Twenty-Four involve cases where the respondent failed to file applications for relief from removal by the court-imposed deadlines, and failed to ensure that her clients complete the biometrics requirement. On appeal, the respondent does not challenge the AO's findings of fact and determination that the respondent's failure to timely file the applications for relief form removal or comply with the biometric requirements constituted a failure to provide competent representation (8 C.F.R. § 1003.102(o)), and a failure to act with reasonable diligence and promptness (8 C.F.R. § 1003.102(q)) (AO at 24-30; Respondent's Br. at 9-11). Rather, the respondent on appeal argues that there is no clear and convincing evidence that that there is "any substantial disruption to the administrative process or any real prejudice to any representative client" (Respondent's Br. at 10).

D2017-0363

The AO, however, properly found that the record evidence clearly and convincingly shows that the respondent's failure to timely file the applications for relief and comply with the biometrics requirement impaired or interfered with the adjudicative process. The respondent on appeal does not meaningfully challenge the AO's findings that her failure to timely file the applications for relief with the Immigration Court, timely comply with the biometrics requirement, or timely notify the Immigration Court of her clients' inability to do so, impeded the Immigration Court's ability to adjudicate her clients' cases, hampered the Immigration Court's ability to schedule and adjudicate other cases that may have been ready to proceed to an individual hearing, and provided the Immigration Court with limited options – continuing the case, bifurcating and then continuing the case, or deeming the applications abandoned – all of which seriously impaired or interfered with the adjudicative process (AO at 25-28). The AO properly sustained the disciplinary charge under 8 C.F.R. § 1003.102(n), as it relates to Counts Seventeen to Eighteen, and Counts Twenty to Twenty-Four.

V.     SANCTIONS

In the NID, Disciplinary Counsel proposed that a two-year suspension from practice before the Immigration Court and the Board be imposed on the respondent. The AO, however, ruled that suspending the respondent from practice of law before the Immigration Courts, the Board and DHS, for an indefinite period of no less than five years from the issuance of the order, subject to conditions prior to reinstatement, was appropriate. On appeal, the respondent argues that "any sanction which would involve [her] suspension would be unwarranted" because the *pro bono* service she provides is "of a significant benefit to the 'public interest,'" and that she should be judged by her practice today which she claims has greatly improved since receiving more funding and staffing (Respondent's Br. at 10, 12-13). Disciplinary Counsel, on the other hand, asserts on appeal that the AO's departure from its initial proposed sanction, and imposition of an indefinite suspension of no less than five years, is warranted and proper (DC Br. at 7).

As previously discussed, the respondent on appeal largely does not contest the AO's determination that she engaged in frivolous behavior, failed to provide competent representation, and failed to act with reasonable diligence and promptness, as provided in 8 C.F.R. § 1003.102(j), (o), (q). Clear and convincing evidence also shows that the respondent engaged in conduct that prejudiced the administration of justice and undermined the integrity of the adjudicative process, as proscribed in 8 C.F.R. § 1003.102(n). At the hearing and on appeal, the respondent's arguments focused less on what she (through her counsel) admitted as "several problems with representation in the early stages of [her] clinic," or "whether or not [she] did everything correctly or whether or not she may have made violations," and more on whether sanctioning her is in the public interest (Respondent's Br. at 12; *see* Tr. at 92-93). The regulations provide that "it is deemed to be in the public interest for an adjudicating official or the Board to impose disciplinary sanctions against a practitioner who falls within one or more of the categories enumerated in [8 C.F.R. § 1003.102]." *See* 8 C.F.R. §§ 292.3(a)-(b), 1003.101(a), 1003.102. We agree, therefore, with the AO that imposition of disciplinary sanctions is appropriate in the instant case (AO at 31-33).

In determining the kind and degree of sanction to be imposed, we agree with the AO that it is appropriate for adjudicators to consult the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards"). At the same time, we emphasize that the ABA Standards

D2017-0363

provide a theoretical framework or guideline, with flexibility for the adjudicator to select the appropriate sanction, depending on the specific facts of a given case. *See Matter of Gupta*, 28 I&N Dec. 653, 657 (BIA 2022) (noting that while the Board is not bound by the ABA Standards, they are persuasive on the issue of determining the propriety of sanctions imposed). In determining the appropriate sanction, we are also mindful that the primary purpose of any discipline imposed is to serve the public interest, and not to punish the attorney. *See* 8 C.F.R. §§ 292.3(a)(1), 1003.102; *see generally Matter of Solomon*, 16 I&N Dec. 388, 408 (BIA 1977; A.G. 1977) (Appleman, concurring).

While we accord respectful consideration to the AO's findings and conclusions, we review the AO's conclusions of law, judgment and discretion de novo. 8 C.F.R. §§ 1003.1(d)(3)(ii), 1003.106(c). The Board has the authority to modify the sanction initially ordered by the AO if warranted. *See Matter of Gadda*, 23 I&N Dec. 645, 650 (BIA 2003), as amended (holding that the Board has authority to increase the level of disciplinary sanction initially imposed by an adjudicating official against an attorney).

Consistent with ABA Standards 3.0, the AO properly found that the factors to be considered in determining the proper sanction are the duty violated; the lawyer's mental state; the potential or actual injury caused by the lawyer's misconduct; and the existence of aggravating or mitigating factors (AO at 32). *See* ABA Standards 3.0 (2019). As found by the AO, and discussed above, the respondent violated her duties to her clients and to the legal system by failing to provide competent and reasonably diligent representation, by engaging in frivolous behavior, and by engaging in conduct that prejudiced the administration of justice and undermined the integrity of the adjudicative process (AO at 32-34). The AO remarked that while some of the respondent's misconduct appeared reckless or negligent, most involved intentional or knowing disregard of her duty as a practitioner and her obligation to comply with court-ordered deadlines (*id.* at 34-35; Tr. at 605-606, 608-609). The respondent on appeal does not contest the AO's findings in this regard (Respondent's Br. at 1-6, 9-11). The respondent likewise does not contest on appeal the AO's findings that her actions or omissions resulted in actual or potential injury to her clients, some of whom has had their applications denied as abandoned, and to the legal system, in filing frivolous appeals, failing to file appeal briefs, and in failing to comply with court-ordered deadlines and filings (AO at 35-36; Respondent's Br. at 1-13).

The ABA Standards, Board cases, and attorney discipline state cases, indicate that in cases involving multiple charges of misconduct and violations of a similar nature as present here, the presumptive sanction has generally been suspension. *See, e.g., Matter of Singh*, 26 I&N Dec. 623 (BIA 2015) (ordering a 16-month suspension for attorney who, inter alia, engaged in conduct prejudicial to the administration of justice in 16 immigration cases for a number of years); *Matter of De Anda*, 17 I&N Dec. 54 (BIA 1979; AG 1979) (ordering a 6-month suspension for attorney who, inter alia, repeatedly failed to file the application for relief and engaged in conduct that obstructed the orderly and timely administration of the immigration laws).[8] We are unpersuaded

---

[8] *See also generally In re Nwaneri*, 978 N.W.2d 878 (Minn. 2022) (ordering 90-day suspension, and two years of supervised probation following reinstatement, for immigration attorney who failed to ensure a client obtained biometrics information before hearing on relief); *Att'y Grievance Comm'n of Maryland v. Taniform*, 286 A.3d 1072, 1079 (Md. 2022) (ordering indefinite suspension with right to apply for reinstatement after 18 months ordered for immigration attorney

D2017-0363

by the respondent's entreaty that she should not be subject to any sanction involving suspension because it does not serve the "public interest" to deprive the "community [o]f her [pro bono] services" (Respondent's Br. at 5, ¶21). The respondent's assertion in this regard reveals a narrow view of what is in the public interest and the purpose for imposing sanctions in disciplinary proceedings, which is to protect the public, preserve the integrity of the immigration courts and the legal profession, and maintain high professional standards by practitioners, by, inter alia, deterring professional misconduct. *See* Professional Conduct for Practitioners – Rules and Procedures, 65 Fed. Reg. 39513-01, 39514 (June 27, 2000); Professional Conduct for Practitioners -- Rules and Procedures, and Representation and Appearances, 73 FR 76914-01, 76915 (Dec. 18, 2008). The respondent cannot be exempt from sanctions for her misconduct solely because she provides a service to the community, as the community she serves deserves the same level of competence and professionalism as any other legal client.

To further determine the proper sanction to impose, the AO properly considered and weighed the aggravating and mitigating factors presented that may justify an increase or decrease in the degree of discipline imposed. *See* ABA Standards 9.1; *Matter of Singh*, 26 I&N Dec. at 625 (noting the careful weighing of aggravating and mitigating factors in determining whether and what sanctions should be imposed). In the instant case, the AO considered the following as aggravating factors: (1) the pattern of misconduct occurring over a period of approximately two years; (2) multiple and repeated violations of the professional code of conduct; (3) the respondent's refusal to acknowledge her misconduct; (4) her substantial experience in the practice of law, particularly immigration law; and (5) prior warnings from Disciplinary Counsel (AO at 36-37). The AO then considered the following as mitigating factors: (1) absence of a formal prior disciplinary record; (2) her reputation; (3) her creation of a pro bono clinic to assist those in immigration proceedings who cannot afford private counsel (*id.* at 37). The AO ultimately found that aggravating factors far outweighed the mitigating factors, and, likewise considering that the most serious charge of misconduct involved the respondent's 'total abandonment' of her "clients in their most desperate time of need," determined that the appropriate sanction is an indefinite suspension for a period of no less than five years, and with her reinstatement conditioned upon a showing of rehabilitation and "changes she has made in the pro bono clinic to ensure these violations will never happen again" (*id.* at 38, 41-43).

We agree with the AO that the cumulative nature of the respondent's misconduct, the injury or potential injury her misconduct had and could have to her vulnerable clients, and the susceptibility of repetition of the misconduct, demands the imposition of a serious sanction of suspension. We note, however, that the AO's imposed sanction of "indefinite suspension, but for no less than five years," with no right to apply for reinstatement for five years, is a sanction that exceeds the three-year maximum recommended by the ABA, and exceeds the conditions provided in the regulations which permit a suspended attorney (and even a disbarred attorney) to apply for early reinstatement

---

who, inter alia, failed to provide competent representation and act with reasonable diligence and promptness in representing client); *see also* ABA Standards 4.42 (suspension appropriate when lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client), 6.22 (suspension appropriate when lawyer knows he or she is violating a court order or rule and causes injury or potential injury to a client, or potential interference with a legal proceeding) (2019).

11

USAO 00012

D2017-0363

after one-half of the suspension period has expired or after one year has passed, whichever is greater. *See* ABA Standards 2.3 (2019); 8 C.F.R. § 1003.107(b)(1). The sanction also is in the higher end of the range of suspension periods that the Board has imposed or upheld in prior published cases that involved more egregious conduct, or conduct involving fraud, misrepresentation or deception, prior discipline orders, or state bar disbarments, none of which are present in this case. *Cf. e.g., Matter of Singh*, 26 I&N Dec. at 626 (16-month suspension for attorney who, inter alia, engaged in conduct prejudicial to the administration of justice by enlisting a legal assistant to impersonate him during telephonic appearances in 16 immigration cases for a number of years); *Matter of Kronengold*, 15 I&N Dec. 157 (BIA 2010) (7-year suspension for attorney who was disbarred in New York where the attorney is permitted to seek reinstatement after 7 years); *Matter of Sparrow*, 20 I&N Dec. 920 (BIA 1994) (10-year suspension for attorney with a conviction which involved a conspiracy to violate immigration laws through a sham marriage scheme, making false statements to the Immigration and Naturalization Service, suborning perjury, and stealing government property, among other things). While we may consider other cases in determining the propriety of sanctions to be imposed, we are cognizant that each case must be assessed on its own facts and circumstances, with its varying rule violations, mitigating and aggravating factors, and unique fact patterns.

In weighing the aggravating and mitigating factors, the AO gave great adverse weight to the respondent's perceived failure to take responsibility for her actions or to acknowledge that she made mistakes in her practice before the Board and Immigration Courts (AO at 38-41). Like the AO, we find concerning the respondent's tendency to blame others, like her clients or the immigration court system, for her actions or inactions, where she, as the primary attorney of record, was tasked to know the pertinent facts in a given case, the proper and timely course of conduct according to those facts and circumstances, and to seek a remedy or guidance if faced with obstacles or uncertainty as to the proper course of conduct (*id.* at 38-39). For instance, it is no defense to a charge of incompetency or lack of diligence that the respondent acquiesced or permitted to occur what she described as repeated errors by a client's husband in the filing of a visa petition that caused numerous continuances and year-long delay in proceedings, errors which she insisted she only learned about "after the fact," despite being the primary attorney of record (AO at 28; Tr. at 242-246, 719-21, 759-62). Likewise, it is no justification or defense to the disciplinary charges that a pro bono liaison Immigration Judge did not regularly meet with the respondent, an experienced attorney, to discuss improving the level or quality of her representation of her clients (Tr. at 141, 266-69, 282, 822).

However, while true that the respondent's refusal to expressly acknowledge or accept her errors before the AO -- whether it be as a legal strategy or otherwise -- appears to evince a lack of remorse or ability to accept responsibility, the record also contains some evidence that the respondent had taken steps to attempt to rectify the failings in the management of her pro bono clinic, including the respondent's admission that she has "not failed to file a brief," since being informed by Disciplinary Counsel of the complaints underlying the instant disciplinary proceedings (AO at 40; *see e.g.,* Tr. at 323-331, 610-612, 614-615). IJ O'Leary, who had initially filed complaints alerting Disciplinary Counsel of the respondent's problematic conduct, testified that he does not know of any instances since the complaints were filed where the respondent engaged in inappropriate conduct (Tr. at 183). The respondent's efforts in this regard reveal an acknowledgement of the errors or mistakes in her previous process and practice, even if she has

000013

USAO 00013

D2017-0363

not expressly done so in words, and even if the AO questioned the lasting success of the respondent's newly implemented case management system and other efforts (AO at 40). We assign some mitigating weight to the respondent's actions before and during the pendency of her disciplinary proceedings as an acknowledgement of, and regret for, her errors and misconduct.

The apparent absence of a dishonest or selfish motive in the instant case is also a mitigating factor that warrants some consideration. *See* ABA Standards 9.32(b) (2019). The respondent has established and maintained an organization that is dedicated to providing pro bono legal assistance and representation for noncitizens in immigration proceedings since 2011, and the noncitizens whose cases are the subject of the charges against the respondent are clients of the respondent's pro bono clinic (AO at 37; Tr. at 602-604). While a violation is no less impactful simply because the legal services rendered are free, the AO should have considered as a mitigating factor the lack of any indication that the respondent's misconduct was committed to profit at the expense of her clients, or for a dishonest purpose, or was based on corrupt motives.

On the other hand, we do agree with the AO that the respondent's pattern of misconduct and experience in the practice of law, particularly immigration law, are aggravating factors that carry substantial weight. As to the latter, the respondent testified that she graduated from law school in 1985, and since that time served in various legal capacities, including starting the non-profit organization Keep Tucson Together ("KTT") in 2011, managing the organization and serving as the primary attorney for all of the organization's clients, while also serving as a full-time Pima County Public Defender, a position she has held for more than 17 years (Tr. at 99, 331-33, 393-95, 4-84, 601-02). The respondent also testified that she has led continuing legal education sessions for volunteer lawyers that covered "all sorts of aspects of the law and procedure and applications," and general information about immigration court practice (Tr. at 619). The respondent presented witnesses who testified to the respondent's lauded reputation in her criminal law practice untainted by reports of missed deadlines, frivolous appeals, failure to file appellate briefs, or failure to file court-ordered briefs and applications, that plagued her practice before the immigration courts and the Board (AO at 37; *see, e.g.,* Tr. at 477-79, 485-88, 563-66, 574-77). The respondent's substantial experience is an aggravating factor because it indicated that she knew the importance of complying with deadlines, court orders and other obligations to her clients in her practice before the criminal courts but was not inclined to give the same consideration to the Immigration Judges, the Board, and her clients in removal proceedings. *See* ABA Standards 9.22(i) (2019).

The vulnerability of the respondent's clients who are in removal proceedings is another aggravating factor to be considered. *See* ABA Standards 9.22(h) (2019). As testified to by the respondent, the individuals who are screened and accepted as clients by the KTT are often poor and are focused more on day-to-day survival than on appointments and assisting in their legal cases (Tr. at 608, 739). With this understanding of her clients' circumstances, we agree with the AO that the respondent's attempt at deflecting responsibility to her clients -- for instance, in the filing of appeals when the respondent had "no idea what the record was," for failing to timely respond to an Immigration Judge's order to file prehearing briefs by the deadline set, or for failing to timely respond to an Immigration Judge's order to file applications for relief or biometrics by the deadline set -- is unavailing (AO at 35, 38; *see, e.g.,* Tr. at 647-48, 694-98, 703-05, 707-23, 731-37, 755-76).

13

USAO 00014

D2017-0363

After considering and balancing all relevant factors, including aggravating and mitigating factors, ABA Standards recommendations and case guidance, we conclude that a suspension period of two years, as originally proposed by Disciplinary Counsel, with leave to seek early reinstatement as provided in 8 C.F.R. § 1003.107(b)(1) after one-half of the suspension period has expired, would serve the pvurpose of deterring future misconduct, preserving the integrity of the legal system, and protecting the public.   While the respondent's cumulative misconduct is significant and serious, it did not warrant the severe sanction  imposed that equal or worse repercussions for the respondent's immigration law practice than disbarment, which is a sanction generally reserved for egregious or grievous acts of professional or ethical misconduct (such as those involving criminal, fraudulent or malicious acts that result in serious injury to another or that severely compromised the integrity of the legal system).   We otherwise adopt the additional conditions to reinstatement ordered by the AO that include the respondent providing an affidavit, under oath, explaining the changes made in the pro bono clinic to ensure the violations at issue would not occur (AO at 41).  The following orders will be entered.

ORDER:  The Board's decision dated July 5, 2023, is vacated.

FURTHER ORDER:   The respondent's appeal is dismissed, and she is suspended from practice before the Board of Immigration Appeals, the Immigration Courts, and DHS for a period of two years, effective 15 days from the date of this order, pursuant to 8 C.F.R. § 1003.106(c).

FURTHER ORDER: The respondent may petition the Board for reinstatement to practice pursuant to the requirements set forth in 8 C.F.R. § 1003.107(b), and the additional condition set forth in this order.

FURTHER ORDER: The respondent is directed to promptly notify, in writing, any clients with cases currently pending before the Board, the Immigration Courts, or DHS that she has been suspended from practicing before these authorities.

FURTHER ORDER: The respondent shall maintain records to evidence compliance with this order.

FURTHER ORDER: The Board directs that the contents of this notice be made available to the public, including at Immigration Courts and appropriate offices of DHS.

000015

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT

| | |
|---|---|
| IN THE MATTER OF<br><br>Mary M. Cowan<br><br>   Respondent. | File No.  D2017-0363<br><br>IN PRACTIONER DISCIPLINARY PROCEEDINGS<br><br>Date:  December 8, 2020 |

**ON BEHALF OF RESPONDENT:**

William G. Walker, Esq.
Attorney for Respondent

**ON BEHALF OF EOIR & DHS:**

Paul A. Rodrigues, Esq.
Disciplinary Counsel

Catherine M. O'Connell, Esq.
Disciplinary Counsel

## FINAL ORDER AND DECISION OF THE ADJUDICATING OFFICIAL

The Disciplinary Counsel for the Executive Office for Immigration Review (Disciplinary Counsel or government) seeks to suspend Ms. Mary M. Cowan (respondent) from the practice of law before the Immigration Courts, Board of Immigration Appeals (BIA or Board), and the Department of Homeland Security (DHS) for no less than two years. The respondent disagrees and argues that any suspension will not be in the public's interest. For the reasons stated below, this Court concludes that the government has met its burden to establish that the respondent violated the rules of professional conduct and that a suspension from the practice of law before the Immigration Courts, Board, and the DHS is appropriate. That suspension shall be indefinite, but for no less than five years. The respondent may seek reinstatement to practice before the Immigration Courts, Board, and the DHS after five years, and the Board may decide whether reinstatement is appropriate given the respondent's egregious violations of the professional code of conduct. Prior to reinstatement, however, the respondent shall file an affidavit, under oath, explaining the changes she has made to her practice to ensure the violations detailed herein are not repeated.

//

Order of the Court
File No. D2017-0363

# I.     BACKGROUND AND PROCEDURAL HISTORY[1]

Mary M. Cowan is an attorney licensed to practice law in the State of Arizona.[2] On August 15, 2019, the Disciplinary Counsel filed a Notice of Intent to Discipline (NID) with the Board.  The NID charges Ms. Cowan with twenty-four separate counts of violating various sections of the federal regulations governing the practice before the Immigration Courts and the Board.  On October 31, 2019, the Board issued a decision forwarding the record to the Office of Chief Immigration Judge for the appointment of an Adjudicating Official.[3]  This Court was appointed to be the Adjudicating Official on March 10, 2020.

On April 15, 2020, this Court scheduled a pre-hearing conference for May 15, 2020.  Four days before the hearing, the respondent filed a pre-hearing memorandum raising a number of issues.  Among the issues she raised was that neither this Court nor any judge from the Phoenix or Tucson Immigration Courts should be the Adjudicating Official in her disciplinary case.  At the pre-trial conference, the respondent elaborated on her request to reassign her case to a different judge.  She argued that the regulations require that her case should not be heard by any judge that the respondent "regularly appears" before.  The government disagreed, arguing that the regulations do not preclude this Court from hearing the respondent's case.

On May 18, 2020, this Court issued an order memorializing the deadlines discussed at the pre-trial conference and provided various requirements for filing motions, exhibits, and witness lists.  In its May 2020 order, this Court also reminded the parties that it held its decision on the respondent's motion to recuse in abeyance because it had not yet received the respondent's memorandum filed days before the hearing.  At the pre-trial conference, the respondent stated that she filed the memorandum via FedEx, but clerical staff notified this Court that the memorandum had not been received.  As such, in its scheduling order this Court gave the respondent until May 20, 2020, to file her pre-trial

---

[1]  Some of the background and procedural history of this case was taken from this Court's order denying the respondent's motion to recuse it from hearing her case.  (*See* Exh. 5 at 1-2.)

[2]  According to an affidavit filed with a motion to recuse, Ms. Cowan is also "on 'inactive-retired' status in the Commonwealth of Pennsylvania."

[3]  Prior to the Board's decision, the DHS filed a motion requesting reciprocal discipline, meaning that any disciplinary decision made in this case should equally apply to appearances before the DHS.  The respondent filed an opposition to the motion, but the Board granted the motion because the regulations permit the DHS to request reciprocal discipline.

USAO 00017

Order of the Court
File No. D2017-0363

conference memorandum with the Court, and required that a courtesy copy be emailed to court staff.  The respondent timely emailed a courtesy copy to court staff.[4]

## A. Summary of Prior Orders Issued by this Court

On June 8, 2020, this Court issued an order denying the respondent's motion to recuse itself from her disciplinary case. (Exh. 5.)  This Court found that the regulations preclude an Adjudicating Official from presiding over a disciplinary case if the official is "the complainant" or in any case "involving a practitioner who regularly appears before the Judge[.]" (*Id.* at 3) (citing 8 C.F.R. § 1003.106(a)(2)(i)).  Based on these regulations, this Court concluded that the respondent does not regularly appear before the Court and thus recusal was unwarranted. (*Id.* at 4-5.)

In accordance with this Court's order providing a briefing schedule for motions, on June 4, 2020, the government filed a motion for this Court to find that the respondent's answer to the NID constituted an admission to all of the factual allegations set forth in the NID.  As such, in accordance with the regulations, the government asked that this Court deem that the respondent admitted all of the factual allegations in the NID.  On July 20, 2020, the respondent filed a timely response to the government's motion.  On September 3, 2020, this Court issued an order granting the government's motion in part and denying it in part. (Exh. 11.)  In this Court's September 2020 order, it found that the respondent failed to properly deny the factual allegations in the NID in all but five factual allegations. (*Id.*)  This Court's order further stated that the government need not present any additional evidence on the factual allegations the Court deemed admitted, but did require the government to present evidence on the five denied factual allegations in the NID that the Court did not deem admitted.[5] (*Id.* at 8.)

A second pre-trial conference was held on September 8, 2020, based on a request from the government and without objection from the respondent.  In its order scheduling the second pre-trial conference, the Court instructed the government to appear via video

---

[4]   The respondent also provided proof that she mailed a hard copy of the pre-trial memorandum to the Court prior the pre-trial conference.

[5]   It should be noted for the sake of clarity that the Court's September 2020 order did not find that the respondent violated the rules of professional conduct.  Instead, it was only ruling on the government's motion, which asked that the Court find that the respondent failed to specifically deny the allegations in the NID and thus deem the allegations admitted. (Exh. 11.)  Indeed, the Court's order specifically referenced that the government was not arguing that the Court should find that the respondent violated the rules of professional conduct solely based on her answer. (*Id.* at 6.)

001556

USAO 00018

Order of the Court
File No. D2017-0363

teleconference (VTC) because the government filed a motion requesting that it be allowed to do so. It also instructed the respondent to appear at the Tucson, Arizona, Immigration Court, and the Court notified the parties that it would appear via VTC from the Phoenix Immigration Court. The purpose of the Court appearing via VTC was for it to determine whether it could effectively conduct the disciplinary hearing via VTC.

At the hearing, this Court notified the parties of the rules related to conducting the hearing due to the COVID-19 pandemic. Specifically, the parties were notified that no more than four individuals could be in the courtroom at one time and no more than 10 individuals could be in the lobby area of the courthouse. No party objected to these requirements.

### B. Rulings on Pending Motions Discussed at the Second Pre-Trial Hearing

At the September 8, 2020 pre-trial conference, this Court ruled on a number of objections filed by the government related to the respondent's witnesses and exhibits. The government filed motions *in limine* to preclude all of the respondent's witnesses from testifying, arguing that "none of the individuals have any personal knowledge of the conduct at issue" and none had "specialized knowledge of the Rules of Professional Conduct (Rules) and whether Respondent's conduct may have violated the Rules." (Govt's Objxn to Respondent's Witnesses at 2.) Ultimately, the government stated that it believed the witnesses were cumulative, and only offered character and reputation evidence. (*Id.*) The Disciplinary Counsel proposed that in lieu of testimony the government would stipulate to the admission of affidavits from the witnesses "for the sole purpose" of considering the testimony "in determining the appropriate sanction, if any" to impose. (*Id.*) The Disciplinary Counsel also objected to five of the respondent's proposed exhibits (namely exhibits A-D) because they are irrelevant to the proceedings.[6] (*Id.*)

This Court gave the respondent an opportunity to respond to the government's objections at the final pre-trial hearing. The respondent argued that the witnesses are relevant because this Court is obligated to determine whether disciplining the respondent is in the public interest and the witnesses will help inform this Court's decision. She further asserted that the exhibits are relevant because they will help the Court understand the current state of the respondent's *pro bono* practice before the Immigration Courts and the Board.

---

[6] These exhibits are part of Exhibit 6, Tabs A-J.

001557

Order of the Court
File No. D2017-0363

After considering the objections and the arguments of the parties, this Court overruled the government's objections. It found that the witnesses were not cumulative because each witness knew the respondent in a different capacity and for varying lengths of time. It also concluded that the witnesses would help the Court determine the appropriate sanction, if any, to impose on the respondent.[7] Finally, this Court found the exhibits were relevant to demonstrate the effect any sanction may have on the public.

The government filed a pre-trial brief, but sought permission to file a brief longer than 25 pages. The respondent did not object, but sought permission to file her own pre-trial brief. The Court granted the government motion and the respondent's request. The Court also granted the government's request to appear via VTC for the disciplinary hearing. The respondent did not object to the government's appearance via VTC, but objected to this Court's appearance via VTC, arguing that live testimony is necessary to access witness credibility "and issues as to 'public interest[.]'"  (Respondent's Mtn at 1.)  In the alternative, the respondent sought to continue her disciplinary hearing "until such time as a full, in-person hearing can be scheduled." (*Id.*)

This Court overruled the respondent's objection regarding appearing via VTC at the September 8, 2020 pre-trial hearing for the following reasons. The respondent's objection to the Court's appearance via VTC was untimely. *See* 8 C.F.R. § 1003.31(c) (stating that the opportunity to file documents "shall be deemed waived" if a respondent fails to timely file documents with the Court based on the Court imposed deadline); *Matter of R-C-R-*, 28 I&N Dec. at 74, 77-78 (BIA 2020).[8] The scheduling order issued by this Court on May 18, 2020, specifically required that all substantive motions be filed no later than August 21, 2020. The parties were aware that this Court was considering appearing via VTC for the disciplinary hearing because it was discussed at the first pre-trial conference on May 15, 2020. Nonetheless, the respondent filed no substantive motions by the court imposed deadline.

In any event, even if the respondent's objection was timely, this Court still concludes that the objection is without merit. Immigration Judges have "broad discretion to conduct and control" proceedings. *Matter of R-C-R-*, 28 I&N Dec. at 77. Immigration

---

[7] The parties were reminded, however, that should the witnesses testify differently than the summary provided by the respondent and that testimony appeared to be irrelevant or cumulative, the government could renew its objection at the disciplinary hearing.

[8] Because disciplinary hearings are to be conducted "in the same manner as Immigration Court proceedings as is appropriate" this order relies on case law and regulations that apply to the Immigration Courts. 8 C.F.R. § 1003.106(a)(2)(v).

proceedings may be conducted via VTC because the "Act and implementing regulations specifically provide for hearings via video conference." *Id.* 80 (citing INA § 240(b)(2)(A)(iii) and 8 C.F.R. § 1003.25(c)). "This authority has been consistently recognized by the courts of appeals." *Id.* (citations omitted). Disciplinary proceedings, like immigration proceedings, must be conducted "in accord with due process standards of fundamental fairness." *Matter of R-C-R-,* 28 I&N Dec. at 81. "Due process requires that respondents . . . must be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (citations and internal quotation marks omitted). A hearing conducted via VTC "does not necessarily deny due process." *Vilchez v. Holder,* 682 F.3d 1195, 1199 (9th Cir. 2012). There is no *per se* violation of a respondent's due process rights merely because a hearing is conducted via VTC. *Id.* To establish a due process violation, the respondent must show "(1) the proceedings was so fundamentally unfair that [she] was prevented from reasonably presenting [her] case, and (2) the [respondent] demonstrates prejudice, which means the outcome of the proceedings may have been affected by the alleged violation." *Id.* (citation omitted). Due process violations require a case-by-case assessment and it depends on "the degree of interference with the full and fair presentation of [the respondent's] case caused by the video conference, and on the degree of prejudice suffered by" the respondent. *Id.* at 1199-1200.

In this case, the respondent has demonstrated no interference in presenting her case nor has she demonstrated any prejudice. This Court was able to observe the witnesses and the parties were able to ask questions of all of the witnesses. The witnesses were able to view documents when necessary and the Court was able to follow along because it had all of the documents before it throughout the proceedings. In short, conducting the respondent's hearing via VTC neither precluded the respondent from presenting her case, nor prejudiced her in any way.

## II.   EVIDENCE PRESENTED

The disciplinary hearing commenced on September 21, 2020, and concluded on September 25, 2020.[9] This Court has considered all of the evidence of record, even if not explicitly mentioned.[10] The following documents were admitted into evidence.

---

[9]   This Court encouraged the parties to discuss settlement of this case at both pre-trial hearings. The Court also notified the parties that if a resolution of the case could be made the parties may notify the Court on the first day of the scheduled disciplinary hearing. No settlement was reached by the parties.

[10]   While the party's motions and briefs were not marked as exhibits, this Court considers the entire file in the respondent's disciplinary case, even not explicitly mentioned, as is required

Order of the Court
File No. D2017-0363

## A. Documentary Evidence

| Exhibit 1 | Notice of Intent to Discipline, pages 1-42 |
|---|---|
| Exhibit 2 | Government's Initial Exhibits, pages 1-724 |
| Exhibit 3 | Respondent's Answer, pages 1-88, *Operating Policies and Procedures Memorandum* 08-01, Attachments 3-4 and Exhibits A-F |
| Exhibit 4 | Board of Immigration Appeals Order, dated October 31, 2019 |
| Exhibit 5 | Adjudicating Official's Order, dated June 8, 2020, Related to Motion to Recuse |
| Exhibit 6 | Respondent's Index of Exhibits (Tabs A-J) |
| Exhibit 7 | Respondent's List of Witnesses, Anticipated Testimony, and Attachments |
| Exhibit 8 | Government's Witness List |
| Exhibit 9 | Government's Supplemental Exhibits and Amended Table of Contents, pages 725-739 |
| Exhibit 10 | Government's Supplemental Exhibits and Amended Table of Contents, pages 740-766 |
| Exhibit 11 | Adjudicating Official's Order dated September 3, 2020, Related to Motion to find Respondent Admitted Factual Allegations |
| Exhibit 12 | Respondent's Second Supplemental Exhibits and Amended Table of Contents, Attachments K-L |

## B. Testimonial Evidence

The parties made opening statements prior to the commencement of testimony. The government called two witnesses—the Honorable Immigration Judges Thomas M. O'Leary and Sean H. Keenan.[11] The respondent called 10 witnesses—Mr. Philip Stump Kennedy; Ms. Lynn Marcus; Mr. Andy Silverman; Ms. Jenna Johnson; Reverend (Retired) John Fife; the Honorable Mayor Regina Romero; Ms. Alison Harrington; Mr. Bates Butler; the Honorable Ron Barber; and the respondent.[12]   The government did not present rebuttal

---

by the regulations. *See* 8 C.F.R. § 1003.103(a)(2)(iv) (stating that "in rendering a decision, the adjudicating official shall consider the following:  the complaint, the preliminary inquiry report, the Notice of Intent to Discipline, the answer, any supporting documents, and any other evidence, including pleadings, briefs, and other materials")

[11]   The government's witness list had a third witness—the respondent—as a potential witness. (*See* Exh. 8.)  The government chose not to call the respondent has a witness in its case-in-chief.

[12]   The respondent's witness list had 14 witnesses listed, but the respondent chose only to call nine of the 14 witnesses.

001560

Order of the Court
File No. D2017-0363

witnesses or evidence.  Both parties gave closing arguments and the case was adjourned for this Court to issue a written decision.

## III.    THE DISCIPLINARY HEARING: FINDINGS OF FACT

As noted above, the NID alleged 24 separate counts of violations of the professional code of conduct with 285 separate factual allegations.  This Court has previously held that the government had proven all but five of those allegations—namely factual allegations 11, 12, 177, 178, and 260—were proven and no further evidence was required because the respondent failed to properly deny the factual allegations in her answer.  (Exh. 11.)  Based on this finding, this Court will not further analyze the 285 factual allegations to determine whether they have been proven, but instead will only focus on the five factual allegations that remain outstanding.

The burden lies with the government to prove "the grounds for disciplinary sanctions enumerated" in the NID "by clear and convincing evidence."  8 C.F.R. § 1003.106(a)(iv).  In this Court's order stating that factual allegations 11 and 12 were not proven, it inadvertently failed to indicate that factual allegation 13 was the actual allegation that the respondent denied in her answer.  (*See* Exh. 3 at 6) (stating that factual allegation is factually inaccurate).  Therefore, this Court amends its prior order to find that factual allegation was similarly denied.  *See* 8 C.F.R. § 1003.23(b)(1) (stating that an Immigration Judge may own his own motion "reconsider any case in which he. . . has made a decision, unless jurisdiction is vested with" the Board).  This reconsideration does not prejudice either party.  The respondent testified about each count in the NID and the government presented all of its evidence against the respondent.  Moreover, neither party requested that this Court clarify its prior ruling.

In any event, this Court concludes that the government has established by clear and convincing evidence that factual allegations 11, 12, and 13 are proven.  The government alleged that the respondent filed a statement with the Board of Immigration Appeals stating the reasons she did not file a brief even after being granted an extension to do so.  (Exh. 1 at ¶ 11.)  It further alleged that the Board took this motion to be a request to extend the briefing schedule a second time.  (*Id.* at ¶ 12.)  Four days later, the BIA denied the request as untimely.  (*Id.*)  Finally, the government asserted that the appeal was summarily dismissed because the respondent's "statements in the Notice of Appeal did not meaningfully apprise the Board of the reasons for the appeal and because, within the timeframe set for filing, Respondent did not file an appeal brief or otherwise notify the Board about her inability to do so."  (*Id.* at ¶ 13.)  The respondent claims that the allegation in factual statement 13 is inaccurate and she testified that she notified the Board that no

brief would be filed. (Exh. 3 at 6.) The record shows otherwise. The allegation is not that the respondent failed to file an extension at all, but rather that she failed to explain her inability to file an appeal within the time set for filing a brief. (*See* Exh. 1 at ¶ 13.) This allegation is proven by the government's documentary evidence and the respondent's own words in her motion to the Board. (Exh. 2 at 27.) The deadline to file a brief was extended to October 11, 2016, but the respondent did not notify the Board that she was unable to meet the extension deadline until November 4, 2016, nearly a month later, and well after the deadline to file the brief had past. (Exh. 2 at 17.)

Factual allegations 177 and 178 relate to a motion to reopen filed before Judge Keenan. (Exh. 1 at ¶¶ 177-78.) Both factual allegations are offered in support of Count 17 of the NID, which alleges that the respondent failed to file an application on her client's behalf by the court's imposed deadline. (*Id.* at 24-25.) Due the respondent's failure, her client's application for relief was deemed abandoned and her client was ordered removed. (*Id.* at ¶ 176.) The respondent's client obtained new counsel, who filed a motion to reopen arguing the respondent was ineffective for failing to file an appeal. (*Id.* at ¶ 177.) The motion was allegedly granted by Judge Keenan. (*Id.* at ¶ 178.) In her answer, the respondent stated that the allegation that she was ineffective is untrue. (Exh. 3 at 61.) The respondent blamed her client for failing to provide any documentary information to support her application for relief. (*Id.* at 60-61.) She reiterated the same argument in her testimony before this Court, claiming that her client's assertions are implausible. This Court disagrees and finds that factual allegations 177 and 178 are supported by clear and convincing evidence. The government's submission demonstrates that a motion to reopen was filed, was based on ineffective assistance of counsel, and was granted by Judge Keenan. (Exh. 2 at 428-439.) Judge Keenan testified to the same at the disciplinary hearing. While the respondent asserts that she was not ineffective, that was not the basis of the allegations in the NID. Instead, the factual allegations merely set forth the timeline, the basis for the motion to reopen, and Judge Kennan's decision on the motion. As such, this Court concludes that factual allegations 177 and 178 have been proven by clear and convincing evidence.

Factual allegation 260, which relates to the respondent's alleged failure to comply with a court-ordered biometrics requirement, states that the respondent "presented a notice from USCIS and alleged that it demonstrated that the biometrics fee had been paid." (Exh. 1 at ¶ 260.) In response, the DHS asserted "that the notice was proof that the application had been filed, but that it did not demonstrate that the biometrics fee had been paid." (*Id.*) In her answer, the respondent stated that the DHS's response discussed in factual allegation 260 is "patently inaccurate[]" and she reiterated this position at her disciplinary hearing.

Order of the Court
File No. D2017-0363

(Exh. 3 at 80.) This Court concludes that the government has proven this factual allegation by clear and convincing evidence based on the respondent's own statements made to Judge O'Leary at the time of the alien's individual hearing.  At the hearing, the DHS notified Judge O'Leary that biometrics had not yet been completed.  (Exh. 2 at 579.)  The respondent was asked to explain the reason biometrics were not completed. (*Id.* at 580.) The respondent provided a receipt notice to the Court and explained that she sent $185 to the government when she submitted her client's application for relief, but the fee receipt only shows that a fee was paid for the application and not the biometrics fee. (*Id.* at 582-83.)  In fact, the respondent admitted that "the fee notice amount received does not include the biometric fee of $85." (*Id.* at 582.)  This admission demonstrates that the government has proven this factual allegation by clear and convincing evidence.

All remaining factual allegations not discussed in this order have already been proven based on this Court's prior order finding that the respondent failed to properly deny the factual allegations in the NID. (Exh. 11.)

## IV.    THE DISCIPLINARY HEARING

As this Court previously stated in a prior order, there are three types of disciplinary proceedings that may affect a practitioner's ability to appear before Immigration Courts or the Board—immediate suspension, summary disciplinary proceedings, and proceedings in which a practitioner has a full hearing.[13]  *See* 8 C.F.R. §§ 1003.103 *et seq* and 1003.106 *et seq*; (*see also* Exh. 11 at 2-4.)  The respondent's case falls into proceedings in which a practitioner has requested a full hearing.  Disciplinary counsel bears the burden to prove the grounds for disciplinary sanctions by clear and convincing evidence.  8 C.F.R. § 1003.106(a)(iv).  In the event "one or more grounds for disciplinary sanctions enumerated in the [NID] have been established by clear and convincing evidence," the Adjudicating Official "shall rule that the disciplinary sanctions set forth in the [NID] be adopted, modified, or otherwise amended."  8 C.F.R. § 1003.106(b).  All grounds in the NID "that have not been established by clear and convincing evidence shall be dismissed."  *Id.*

The parties agree that the NID sets forth three categories of violations of the code of professional conduct.  First, Counts 1-11 relate to claims that the respondent failed to provide specific grounds for an appeal and she failed to file an appeal after affirmatively stating an intent do so in the Notice of Appeal.  These counts also allege that the respondent

---

[13] These same procedures apply to accredited representatives. 8 C.F.R. § 1003.106 *et seq*. Because the respondent is a licensed attorney, this order only refers to practitioners or attorneys rather than accredited representatives.

001563

Order of the Court
File No. D2017-0363

did not timely notify the Board that she did not intend to file an appeal in any of the cases listed in the NID. Second, Counts 12-16 and Count 19, allege that the respondent failed to file court-ordered briefs by the court imposed deadlines. Finally, Counts 17-18 and Counts 20-24 allege that the respondent failed to file applications or ensure that her clients' completed biometrics by court-imposed deadlines. Based on the respondent's conduct, the government charged the respondent with violating four different sections of the code of professional conduct—(1) 8 C.F.R. § 1003.102(j) (frivolous behavior); (2) 8 C.F.R. § 1002.102(n) (conduct prejudicial to the administration of justice); (3) 8 C.F.R. § 102(o) (competence); and (4) 8 C.F.R. § 1003.102(q) (diligence and promptness).

## A. STATEMENT OF LAW

Frivolous behavior includes actions that the practitioner "knows or reasonably should have known" lacks an "arguable basis in law or in fact[.]" 8 C.F.R. § 1003.102(j). Examples of such behavior include filing an appeal without first inquiring under the circumstances that an appeal "is well-grounded in fact and is warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law and is not interposed for any improper purpose." 8 C.F.R. § 1003.102(j)(1). This section of the code of professional conduct assumes that the practitioner has formed her opinion after a reasonable inquiry under the circumstances. *Id.*

Conduct that is prejudicial to the administration of justice or undermines the integrity of the adjudicative process includes "any action or inaction that seriously impairs or interferes with the adjudicative process when the practitioner should have reasonably known to avoid such conduct[.]" 8 C.F.R. § 1003.102(n).

Competent representation requires that a practitioner has "the legal knowledge, skill, and thoroughness, and preparation reasonably necessary for the representation." 8 C.F.R. § 1003.102(o). In order to competently handle a particular matter, a practitioner must inquire into and analyze "the factual and legal elements of the problem, and use. . . methods and procedures" to meet the standards of a competent practitioner. *Id.*

A practitioner must act "with reasonable diligence and promptness in representing" her client. 8 C.F.R. § 1003.102(q). In so doing, a "practitioner's workload must be controlled and managed so that each matter can be handled competently." 8 C.F.R. § 1003.102(q)(1). A practitioner must also "act with reasonable promptness." 8 C.F.R. § 1003.102(q)(2). This requires that the practitioner comply "with all time and filing limitations." *Id.*

USAO 00026

Order of the Court
File No. D2017-0363

## B. FINDINGS RELATED TO VIOLATIONS OF PROFESSIONAL CODE OF CONDUCT

### 1. Counts 1-11

In Counts 1-11, the government alleges that the respondent failed to provide specific grounds for an appeal and she failed to file an appeal after affirmatively stating an intent do so in the Notice of Appeal. These counts also allege that the respondent did not timely notify the Board that she did not intend to file an appeal in any of the cases listed in the NID. The respondent asserts that she did not file briefs because her clients chose not to do so, engaged in criminal activity which could make success on appeal unlikely, or the respondent failed to discovery any appealable issues after her review of the record and the transcript of proceedings.

### a. The Respondent Engaged in Frivolous Behavior as it Relates to Counts 1-9 and Count 11

On 10 of 11 separate occasions, the respondent acted frivolously by filing an appeal with the Board without first making a reasonable effort to determine whether the appeal was well-grounded in fact and warranted by existing law or an extension or modification of the law. By her own admission in her answer and at the disciplinary hearing, the respondent was unable to make that decision until she reviewed the entire record, which included all of the transcripts of the proceedings and the Immigration Court's Record of Proceeding (ROP). Yet in every one of the 11 counts, the respondent filed a Notice of Appeal wherein she alleged that an Immigration Judge "erred as a matter of law." (Exh. 1 at ¶¶ 4, 18, 30, 40, 50, 62, 74, 84, 94, 106, and 118.) In Count 3, the respondent added a conclusory statement that her client "established that he is eligible for a favorable grant of asylum and withholding and was, indeed, tortured and is justified in his belief that he would be tortured if he were removed to Mexico and, therefore, is eligible for protection pursuant to the Convention Against Torture." (*Id.* at ¶ 30.) In one instance, the respondent explicitly alleged that she would elaborate the basis of her appeal in her brief (*Id.* at ¶ 4), but in all cases she notified the Board that she would file a brief. (*Id.* at ¶¶ 5, 19, 31, 41, 51, 63, 75, 85, 95, 107, and 119.) The respondent, however, never filed a brief in any of the 11 cases detailed in the NID. (*Id.* at ¶¶ 12-13, 23, 34-35, 44-45, 56-57, 68-69, 78-79, 88-89, 100-101, 112-13, 124-25.) Instead, the Board summarily dismissed her client's appeals in every case. (*Id.*) As she admitted at the disciplinary hearing, it was her practice to allow the Board to summarily dismiss any appeal she filed when she decided not to file a brief.

001565

Order of the Court
File No. D2017-0363

  In an attempt to explain her conduct, the respondent stated in her answer and reiterated in her testimony before this Court, that it is nearly impossible to "initiate writing of appeal brief and/or initiate specific legal research until one has the completed written transcript of proceedings to review for error." (Exh. 3 at 8.) It was thus her practice to file a Notice of Appeal so that she could review the transcripts in the case to determine the possible legal issues even if she was counsel of record before the Immigration Judge. (*See id.*) She admits in her answer that after a review of the record for all but two of the 11 cases listed in the NID, she did not identify any appealable issues and therefore notified her clients that the appeal would be dismissed.[14] (*Id.* at 1-43.) Filing a Notice of Appeal and stating that the judge erred as a matter of law is designed, according to the respondent, to "preserve the practitioner's ability to challenge the decision on this ground if, after review of the written record of proceedings and the applicable case law, there is a basis to file such a brief." (*Id.* at 28.) In fact, the respondent argues that filing an appeal that she knew "wholly lacked legal merit" would have been a violation of the professional rules of conduct. (*Id.* at 13.) The respondent asserts that a practitioner need only file a brief if she "identified errors and omissions giving rise to appealable issues after diligent review of the written transcript of proceedings which is delivered simultaneously with the briefing schedule." (*Id.* at 15) (internal quotation marks omitted). For the respondent, allowing for a case to be summarily dismissed is merely the inevitable result of a failure to file an appeal because it is "the appropriate procedural result after the practitioner scrutinized the record for errors and/or omissions and identified none." (*Id.* at 16.) Indeed, the respondent asserts, the "burden is not on the practitioner to withdraw the Notice [of Appeal] after review of the record because the Notice itself informs the practitioner that 'the Board *may* summarily dismiss'; no further action is required from the practitioner." (*Id.*) (emphasis in original).

  These explanations do not excuse the respondent's conduct as it relates to the charge of frivolous behavior. The respondent was on notice that when the Board summarily dismisses an appeal she may have committed a violation of the professional code of conduct. *See* 8 C.F.R. § 1003.1(d)(2)(iii) (stating an appeal that is summarily dismissed by the Board "may constitute frivolous behavior under § 1003.102(j)"); *see also* BIA

---

  [14] The respondent asserted that she discovered appealable issues in two cases, but did not file an appeal in either case. (Exh. 3 at 23-26 and 36-41.) In the first case, the respondent did not file an appeal because her client conceded the validity of new criminal charges and thus the respondent "decided it was not prudent to pursue the appeal." (*Id.* at 23-24; Exh. 2 at 100-01.) In the second case, the respondent identified appealable issues both at the merits hearing and after her review of the transcripts. (*Id.* at 37-38.) A brief was filed in the case, but it was untimely and the Board summarily dismissed the appeal. (*Id.* at 37-38; Exh. 2 at 162.) In any event, in neither case did the respondent file a timely brief or notify the Board as to why she failed to do so.

Practice Manual § 4.7(e) (October 5, 2020) (stating that if a practitioner states that an appeal will be filed on the Notice of Appeal, but the party "later decides not to file a brief, that party should notify the Board in writing *before* the date the brief is due") (emphasis in original).   Moreover, the respondent's actions demonstrate that she understood that she should notify the Board if she did not wish to file an appeal.   Twice the respondent filed a notice with the Board, albeit after the briefing deadline, that no appeal brief would be filed. (Ex. 2 at 15-18, 175-81; Exh. 3 at 6 and 41-42.)   On cross examination, when the respondent was asked why she twice notified the Board that she would not file an appeal, but otherwise failed to provide such notice, she could not give an explanation for the difference in her actions.

The respondent's actions constitute frivolous behavior.   She failed to take reasonable efforts to determine if there were any appealable issues before filing a Notice of Appeal in 10 of the 11 cases.   At the time of the filings of the Notice of Appeal, on its face, the respondent's Notice of Appeal lacked merit because she had no idea whether the judge committed any error because she did not identify any issues until after she reviewed the transcripts in those cases.   She made these claims without actually conducting any analysis of her client's cases.[15]   Such conduct is in direct contravention of the requirement that all filings, including Notices of Appeal, must have an "arguable basis in law or fact" which is something the respondent knew or "reasonably should have known[.]"  8 C.F.R. §1003.102(j).   Failing to make any reasonable effort, such as requesting a copy of the recorded hearings from the Immigration Court or reviewing the ROP at the Court, demonstrates that the respondent's Notice of Appeal in each of these cases was not "well-grounded in fact and [was not] warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law[.]"  8 C.F.R. § 1003.102(j)(1). Accordingly, the allegations in Counts 1-9 and 11 related to frivolous conduct are adopted and that same allegation in Count 10 is dismissed.  8 C.F.R. § 1003.106(b).

---

[15]   The respondent stated that she found appealable issues in two cases (Counts 6 and 10), but she only identified appealable issues in one case (Count 10) before filing a Notice of Appeal with the Board. (Exh. 3 at 23-26 and 36-41.)  Nevertheless, the respondent failed to timely file an appeal or notify the Board that she would not be filing an appeal related to the one case where she found appealable issues before filing the Notice of Appeal. (Exh 2 at 156-62; Exh. 3 at 37-38.) The respondent's conduct related to Count 6 amounts to frivolous behavior because she had not ascertained whether the Immigration Judge had erred before she filed the Notice of Appeal.  As it relates to Count 10, this Court concludes that filing a Notice of Appeal was not frivolous because this Court credits the respondent's assertion that she found appealable issues prior to filing the Notice of Appeal. (Exh. 3 at 37.)

>    b. *The Respondent's Conduct Constitutes Prejudice to the Administration
>    of Justice or Undermines the Integrity of the Adjudicative Process as it
>    Relates to Counts 1-11*

In her answer and before this Court, the respondent stated that her conduct related to Counts 1-11 was not prejudicial to the administration of justice nor did it undermine the integrity of the adjudicative process. In some cases, the respondent asserted that she did not file an appeal because she found no appealable issues, she discussed this conclusion with her clients, and notified them that their appeal would be summarily dismissed. (Exh. 3 at 6, 13-14, 31, 34-35.) The respondent also claimed in her answer that allowing a case to be summarily dismissed did not "seriously impair or interfere with the adjudicatory process; indeed, the process rendered the inevitable result given the fact that there simply was no basis to continue the appellate process." (*Id.* at 13.)

In one case, she filed a notice of appeal, reviewed the transcripts, and found no appealable issues. (*Id.* at 10.) She further discussed with her client the possible options and the consequences of those options. (*Id.*) Ultimately, the client decided to voluntarily depart the United States and the respondent documented this departure. (*Id.*) In two cases, the respondent filed a notice of appeal and identified potential appealable issues, but she could not locate the clients and thus did not file an appeal brief. (*Id.* at 17 and 21.) The respondent also identified appealable issues in another case after reviewing the transcripts and record, but the client committed a new criminal act and the respondent "decided it was not prudent to pursue the appeal." (*Id.* at 23-24.)

Count 10 relates to a case where two juveniles were placed in immigration proceedings. (*Id.* at 36.) The clients' applications for relief were denied and the respondent filed an appeal, reviewed the record, and identified a number of appealable issues, but the father of the clients decided that they would return to Mexico. (*Id.* at 37.) Based on these facts, the respondent stopped working on the appeal. (*Id.*) Later, the clients' father changed his mind and notified the respondent, but no attorney was available to continue the brief writing and thus the respondent filed a motion to reopen or reconsider a late filed brief with the Board. (*Id.*). Finally, in one case, counsel admits that the *pro bono* clinic did not properly calendar the deadline to file the brief. (*Id.* at 41.) A motion to extend the briefing deadline was granted and once counsel determined that no appeal would be filed, she untimely filed a notice with the Board that no brief would be filed. (*Id.*)

An overarching theme of the respondent's answer and testimony is that she must review the record and transcripts before she can make an informed decision on whether to appeal a case. (*Id.* at 28.) Indeed, as noted above, she asserts that the "statement 'the

Order of the Court
File No. D2017-0363

Immigration Judge erred as a matter of law' simply preserves the practitioner's ability to challenge the decision on this ground if, after review of the written record of proceedings and the applicable case law, there is a basis to file such a brief." (*Id.*)

On Counts 1-11 the respondent's conduct prejudiced the administration of justice and undermined the integrity of the adjudicative process. The respondent has been a certified representative or practicing lawyer in Immigration Court for nearly forty-years dating back to the late 1970s. (Respondent's Affidavit in Support of Motion to Recuse at ¶ 4.) Her lengthy practice in Immigration Courts spans nine Presidents of the United States dating back to at least President Gerald Ford. Clearly, the respondent is an experienced immigration practitioner who is well aware of the interworking of the adjudicative process, the Immigration Courts, and the Board. *See* 73 Fed. Reg. 76914, 76918 (Dec. 18, 2008) (to be codified at 8 C.F.R. §§ 1001, 1003, and 1292) (explaining that 8 C.F.R. § 1003.102(n) "is based on ABA Model Rule 8.4(d)," and as such, "it is a well-known ethical rule with which most attorneys must comply whenever representing parties before a tribunal"). She is also aware of her obligation to ensure that appeals are not routinely summarily dismissed by virtue of the fact that the regulations warn practitioners that summary dismissal may result in a finding that the practitioner violated the professional code of conduct. *See* 8 C.F.R. § 1003.1(d)(2)(iii). She also knows that the Board encourages parties to notify the Board if a brief will not be filed. BIA Practice Manual at 4.7(e).

As noted above, the respondent did notify the Board on two occasions, albeit untimely, that she would not file an appeal. (Exh. 3 at 6, 41, and Exhibit D.) The respondent was questioned at her hearing about this inconsistent practice and she could not provide any explanation for why she sometimes filed a notice of withdrawal of her appeal and other times she did not. Finally, as the respondent admitted in her answer and to this Court, once a notice of appeal is filed, transcripts are created of every hearing before the Immigration Court, and the transcripts are sent to counsel.

Appeals to the Board must provide the appellate body with enough information to apprise it "of the issues on appeal so that the BIA is not left to search through the record and speculate on what possible errors" the alien claims were made by the Immigration Judge. *Singh v. Gonzales*, 416 F.3d 1006, 1010 (9th Cir. 2005) (citations omitted). In short, an alien must provide the Board with sufficient notice of the errors he claims were committed by the Immigration Judge in his case. An alien may "either meet the BIA's notice requirement by specifying the grounds for appeal in the notice of appeal or by filing a separate brief." *Rojas-Garcia v. Ashcroft*, 339 F.3d 814, 820 (9th Cir. 2003).

USAO 00031

Order of the Court
File No. D2017-0363

A notice of appeal must "inform the BIA of what aspects of the [Immigration Judge's] decision were allegedly incorrect and why." *Id.* at 1011 (citation omitted). Otherwise, the Board would be "forced to decipher general statements of error, unsupported by specific factual or legal references," and then the Board would need "to spend time and resources reconstructing the proceedings before" the Immigration Judge and build the alien's "legal case, in some instances only to conclude that the appeal was utterly without merit." *Id.* at 1010. On the other hand, when an appeal is specific and it provides "the reasons for an appeal, the BIA can deal promptly with appeals and focus resources on nonfrivolous appeals to reach a correct resolution." *Id.* In fact, "[f]rivolous and dilatory appeals are extremely wasteful of the Service's and [the] Board's limited resources." *Matter of Holguin*, 13 I&N Dec. 423, 424 (BIA 1969). Such appeals "require needless transcription of the records of deportation hearings. They impinge upon the time and professional attention needed for truly meritorious cases, of which there are many." *Id.* To ensure that the immigration laws are effectively administered, the Board is required to "discourage frivolous appeals." *Id.*

In the case before this Court, the respondent merely claimed legal error and that error would be further discussed in a brief filed with the Board. No brief was timely filed in any of the cases detailed in Counts 1-11 and this inaction seriously impaired or interfered with the adjudicative process because the Board had to spend time on an appeal, review the notice of appeal to determine if it was sufficiently detailed and draft an opinion summarily dismissing the appeal, all with a finite amount of resources and time. Had the Board received notice that an appeal would not be filed, that entire process would be short-circuited. Moreover, if the respondent acted diligently and reviewed the record and audio recordings at the Immigration Court, no transcript would be created and the respondent could have determined that there were no appealable issues in these cases before filing a notice of appeal. *See Irigoyen-Briones v. Holder*, 644 F.3d 943, 944 (9th Cir. 2011) (stating that counsel could not decide to take the respondent's case without first listening to the audio recordings of the proceedings, which he promptly did after being retained). The respondent's inaction of failing to notify the Board that she did not intend to file a brief impaired and interfered with the Board's adjudicative process by requiring it to spend time transcribing the proceedings and deciding on whether the notice of appeal was sufficient to issue a decision on the appeal or to summarily dismiss the appeal. *See Matter of Valencia*, 19 I&N Dec. 354, 355 (BIA 1986) (stating that it is "essential to the Board's adjudication of an appeal that the reasons given on the Notice of Appeal be as detailed as possible so that the alleged error can be identified and addressed.") Without specificity in a Notice of Appeal, "the Board can only guess at how the alien disagrees with the immigration judge's decision." *Id.* Despite the respondent's claim to the contrary, it was

001570

Order of the Court
File No. D2017-0363

her responsibility to notify the Board that she would not file a brief when she claimed she
would do so. *See Matter of Lodge*, 19 I&N Dec. 500, 501 (BIA 1987) (stating that simply
"indicating in a Notice of Appeal that oral argument is desired does not relieve the
respondent for the responsibility for meaningfully informing the Board of the reason for
the appeal"). As such, the allegation that the respondent violated Section 1003.102(n) in
Counts 1-11 are adopted.[16]

### c. *The Respondent Failed to Provide Competent Representation as it Relates to Counts 1-11*

There has been no evidence presented to find that the respondent does not have the
legal knowledge or skills necessary to reasonably represent her clients. The evidence does
show, however, that the respondent lacked thoroughness and preparation in her handling
of these cases detailed in Counts 1-11.

"The interrelated obligations of thoroughness and preparation require a lawyer to
investigate all relevant facts and research applicable law." Ann. Model Rules of Pro.
Conduct r. 1.1 annot. Investigation and Research (Am. Bar Ass'n 2019); *see also* 73 Fed.
Reg. 76914, 76918 (explaining that because 8 C.F.R. § 1003.102(o) is "based on ABA
Model Rule 1.1," relevant ABA comments concerning that rule are "an important aid in
interpreting this disciplinary ground"). Absent an "inquiry into and analysis of" the facts
of a case, a practitioner can neither "apply [relevant rules and principles] to clients'
circumstances," nor accurately assess the level of "attention and preparation" a case
requires. *See* Ann. Model Rules of Pro. Conduct r. 1.1 cmt. 5.

Here, the respondent failed to analyze factual and legal issues prior to filing an
appeal in 10 of the 11 instances listed in the NID. As noted above, prior to filing a Notice
of Appeal, the respondent did not know whether she had a factual or legal basis to appeal
clients' cases, other than the case listed in Count 10 of the NID. In many cases, she filed
a notice of appeal only because her client asked her to do so and without conducting any
independent research of her own. (Exh. 3 at 4, 8, 12, 20, 23, and 26-27.) To be sure, the
time frame to research and analyze a case is limited, but the regulations make clear that
"[c]ompetent handling of a particular matter includes inquiry into and analysis of the

---

[16] This conclusion is reached even though the respondent was aware of appealable issues
in one case (Count 10) prior to filing the Notice of Appeal because the respondent never timely
filed an appeal or notified the Board of her intent not to do so. As such, the Board still expended
time and limited resources to summarily dismiss that appeal.

Page **18** of **45**

factual and legal elements" presented, and the respondent's extensive experience demonstrates that she was aware of those requirements. 8 C.F.R. § 1003.102(o).

In some cases, the respondent's clients either departed the United States on their own or the respondent facilitated their departure. (*Id.* at 9-10, and 19.) In none of these cases, however, did the respondent act competently because she failed to notify the Board of these intervening events, something a competent practitioner would do. *See Singh*, 416 F.3d at 1010; Ann. Model Rules of Pro. Conduct r. 1.1 annots. Procedure, Court Rules ("A lawyer is required to know and follow all applicable rules of procedure. [. . .] Violation of court rules may also constitute lack of competence . . . ."); *see also* 73 Fed. Reg. 76914, 76918 (noting that 8 C.F.R. § 1003.102(o) "provides sufficient information for practitioners to be on notice of their duty to represent their clients competently"). The respondent's experience also put her on notice of the complex and consequential nature of appeals in immigration proceedings—where an appeal is potentially a client's last chance to avoid deportation. *See* Ann. Model Rules of Pro. Conduct r. 1.1 cmt. 5 (explaining that "attention and preparation are determined in part by what is at stake" in a case, and matters of greater complexity and consequence "ordinarily require more extensive treatment"). Yet the respondent repeatedly filed Notices of Appeal "that did not meaningfully apprise the Board of the reasons for the appeal," and in such cases she failed to timely file appeal briefs or otherwise notify the Board about her inability to do so. (Exh. 1 at ¶¶ 13, 23, 35, 45, 57, 69, 79, 89, 101, 125.) Her handling of these cases reflects a lack of inquiry, analysis, and preparation, which amounts to a failure to provide competent representation to her clients. 8 C.F.R. § 1003.102(o). Accordingly, the allegations in Counts 1-11 related to competent representation are adopted.

### d. The Respondent Failed to Act with Reasonable Diligence and Promptness in Representing Her Clients as it Relates to Counts 1-11

As noted above, the respondent did not timely file a brief in any of the cases listed in Counts 1-11 in the NID. In each instance, the respondent also did not timely notify the Board that she was withdrawing her client's appeal or would not file a brief. (Exh. 3 at 4-43.) In two instances (Counts 1 and 10), the respondent notified the Board that she would not file an appeal, but that notification was untimely. (*Id.* at 6 and 37-38.) The respondent repeatedly flouted the Board's briefing schedule and deadlines by asserting that she could not determine whether appealable issues existed before filing a Notice of Appeal. She further repeatedly failed to notify the Board that she would not file an appeal by claiming that such a process is contemplated by Board's regulations regarding summary dismissal.

USAO 00034

Order of the Court
File No. D2017-0363

The respondent's arguments are unconvincing. A practitioner is obligated to act with reasonable promptness, which means, at a minimum, she must comply "with all time and filing limitations." 8 C.F.R. § 1003.102(q)(2). These time and filing limitations requires that a practitioner notify the Board if she will not file a brief when she asserted she would in her Notice of Appeal. To find otherwise would mean that practitioner could file Notices of Appeal without conducting any analysis of their clients' case and leave it to the Board to eventually summarily dismiss their appeals. Such a practice is not contemplated by the rules of professional conduct. *See, e.g.*, Ann. Model Rules of Pro. Conduct r. 1.3 annots. Taking No Action, Failure to Complete Work (Am. Bar Ass'n 2019) (explaining that ABA Model Rule 1.3 "imposes a duty to carry through to conclusion all matters related to the representation, unless the lawyer withdraws," and noting that "a lawyer who takes no action on a case is subject to discipline under Rule 1.3"). Indeed, on at least two occasions, albeit untimely, the respondent notified the Board that she would not be filing a brief because she had previously filed a request to extend the briefing deadline. Clearly, the respondent knew that at least for some cases, it is proper practice to notify the Board that she would not be filing a brief. Her failure to do so in a timely manner in all cases demonstrates that she failed to competently represent her clients because she did not act "with reasonable diligence and promptness in representing" her clients. 8 C.F.R. § 1003.102(q). This Court, therefore, concludes that the allegations in Counts 1-11 related to competent representation are adopted.

### 2. Counts 12-16 and Count 19

In Counts 12-16 and Count 19, the government alleges that the respondent failed to file court-ordered briefs by court imposed deadlines. The respondent does not contest these allegations, but rather states that she was unable to file briefs because the *pro bono* clinic was not equipped to do so or that briefs were unnecessary because the judge had all of the information he needed to decide the cases before him.

#### a. *The Respondent's Conduct was Prejudicial to the Administration of Justice and Undermined the Integrity of the Adjudicative Process as it Relates to Counts 12-16 and Count 19*

The respondent failed to file court-ordered briefs by court imposed deadlines in six cases detailed in Counts 12-16 and Count 19 of the NID. (Exh. 1 at 15-24 and 26-30.) In each case, Judge Keenan scheduled an individual hearing and provided the respondent with a briefing deadline to outline the clients' eligibility for relief. In each instance, either the respondent, or counsel appearing on behalf of the respondent, accepted the deadline issued by the Court without hesitation or a request for additional time.

001573

Order of the Court
File No. D2017-0363

The respondent gave a number of reasons for why she failed to file a brief as ordered by Judge Keenan. To Judge Keenan, the respondent claimed that she thought a brief was filed by "someone else," that the file was "inadvertently archived," that the application tells the story, implying that a brief was unnecessary, that the clinic was not organized in a way to file briefs, or that the respondent believed "the hearing would be continued because" her client "had an appeal pending in his criminal case." (Exh. 1 at 15-16, 19-21, and 27.)

In her answer, the respondent discussed each count in the NID separately. As it relates to Count 12, she stated that normally Immigration Judges do not require briefs to be filed and that Judge Keenan "is the only Judge in the courts Clinic lawyers practice who requests a 42b brief." (Exh. 3 at 44.) While the respondent stated she was not suggesting that a judge's orders should be ignored, she implied that the requirement to file a brief was unnecessary because the contents of the application and the testimony of the alien should be sufficient given that the law does not change much as it relates to cancellation of removal for certain nonpermanent residents. (*Id.*) She further argued that because this Court's *Operating Policies and Procedures Memorandum* 08-01 states that it "is incumbent on every Judge to facilitate *pro bono* representation[]" Judge Keenan should not have treated the respondent with "hostility and communicate through clearly confrontational interrogation[.]" (*Id.* at 47.) She also stated that because the DHS did not file a brief this Court should give no weight to this complaint and it should be dismissed.[17] (*Id.*)

The respondent reiterated the same arguments in her answer related to Counts 12-16 and Count 19, as she did regarding Counts 12, namely that the judge had all of the information necessary to make a decision without the ordered brief. (*Id.* at 49.) She asserted that the result of the case had nothing to do with whether a brief was filed, but rather a disagreement regarding the level of hardship the client's United States citizen children would suffer if the client were removed. (*Id.*) In two cases, the respondent was unable to file a brief because she could not locate her client, but, as she admitted during her testimony before this Court, she did not notify Judge Keenan of her failure to locate

---

[17]   In the respondent's answer and through counsel at the disciplinary hearing, the respondent argues that the government failed to submit a brief as ordered by Judge Keenan. (Exh. 3 at 47-48, and 53.) As such, the respondent claims, this Court should not issue any disciplinary sanction against the respondent if none will be leveled against the DHS attorneys. This argument is not persuasive. First, this Court has no authority to issue disciplinary sanctions against a party that is not before it. Second, this Court has no jurisdiction to issue disciplinary sanctions against DHS attorneys. 8 C.F.R. § 1003.101(b). Finally, the respondent's conduct is not excused assuming that there is a colorable claim regarding the asserted shortcomings of DHS counsel in the cases cited by the respondent.

USAO 00036

her client. (*See id.* at 51 and 56.)  In another instance, the respondent admitted that the *pro bono* clinic only had the capacity to prepare applications for relief, provide lawyers "to advise and prepare clients for hearings, to appear at master calendar hearings and present the case at the merit hearing[.]" (*Id.* at 53.) The clinic did not, however, "have capacity to produce a pre-trial brief." (*Id.*)

The government has met its burden to demonstrate that the respondent's failure to file Court ordered briefs as detailed in Counts 12-16 and Count 19 was prejudicial to the administration of justice and undermined the integrity of the adjudicative process.  The respondent's statements in her answer and testimony before this Court does not change the Court's conclusion.  In both her answer and testimony before this Court, the respondent time and again asserted that the administration of justice was not undermined nor was the integrity of the adjudicative process affected because the judge had all of the information he needed to make a decision.  The respondent's statements clearly indicate to this Court that she does not fully appreciate the impact her actions had on the adjudicative process. *See also* Ann. Model Rules of Pro. Conduct r. 8.4 annot. Intent Not an Element ("A lawyer need not have intended to prejudice the administration of justice to violate the rule.") (citing *In re Alexander*, 300 P.3d 536 (Ariz. 2013) (explaining that because conduct prejudicial to the administration of justice requires no mental state other than negligence, a lawyer's motives for engaging in such conduct are immaterial)).

As the respondent admitted to this Court, a well-drafted brief could make an enormous difference in whether a judge grants relief or not.  An alien may not be able to persuasively articulate the hardship to his qualifying relative, but a cogent, well-written brief could persuade a judge that he should grant relief from removal.  And the respondent admitted as much before this Court.  In any event, the respondent should have reasonably known that failing to write a brief as ordered by the Court would seriously impair or interfere with the judge's ability to adjudicate an alien's case fairly and efficiently. *See* Ann. Model Rules of Pro. Conduct r. 8.4 annot. Abusive or Disruptive Behavior ("Conduct that is abusive or disruptive or that impedes the proper functioning of the legal system can violate Rule 8.4(d)."). As Judge Keenan stated in his testimony before this Court, failing to file a brief delays cases and slows down hearings because a brief can identify and narrow issues in a case.  This testimony demonstrates and the respondent's admission shows that a brief can be the ultimate persuasive tool to convince a judge to grant relief, and a failure to file a brief impairs and interferes with the judge's ability to adjudicate the cases before him. *See* 8 C.F.R. § 1003.102(n) (stating that "any action or inaction that seriously impairs or interferes with the adjudicative process when the practitioner should have reasonably known to avoid such conduct" amounts to prejudice to the administration of justice and

001575

USAO 00037

Order of the Court
File No. D2017-0363

undermines the integrity of the adjudicative process). Consequently, this Court concludes that the respondent's conduct was prejudicial to the administration of justice and undermined the integrity of the adjudicative process as detailed in Counts 12-16 and Count 19 in the NID. As such, those allegations are adopted.

### b. The Respondent Failed to Competently Represent as Detailed in Counts 12-16 and Count 19

The government has demonstrated that the respondent's failure to abide by court imposed deadlines amounts to a failure to provide competent representation. Competency requires, among other things, preparation as is reasonably necessary to represent a client. 8 C.F.R. § 1003.106(o). Failure to timely file court ordered briefs goes to the heart of competent representation. It matters not that the respondent may believe that a brief would be unhelpful to the judge. Instead, a competent practitioner ensures that she timely files all documents, including briefs, by court imposed deadlines. *See id*. This is particularly important in cases where an alien may not be able to persuasively articulate the reasons why relief should be granted. As the respondent admitted to this Court, a well-written and argued brief can persuade a judge to grant relief. But the respondent did not do that. Instead, she repeatedly ignored deadlines and was, at a minimum, not reasonably prepared for the merits hearing in each of the cases detailed in Counts 12-16 and Counts 19 of the NID. This lack of preparation demonstrates that the respondent did not competently represent her clients because she failed to inquire into and analyze "the factual and legal elements of the problem, and use . . . methods and procedures" to meet the standards of a competent practitioner. *Id*. Accordingly, this Court adopts the allegation that the respondent failed to competently represent her clients as discussed in Counts 12-16 and Counts 19 of the NID.

### c. The Respondent Failed to Act with Reasonable Diligence and Promptness as it Relates to Counts 12-16 and Count 19

The respondent's conduct in Counts 12-16 and Count 19 also demonstrate that she did not act with reasonable diligence and promptness. The respondent admitted in her answer and to this Court that she did not file a brief in any of the cases cited in the NID. Sometimes her workload or lack of staff caused her failure to file briefs, and other times it appears that she simply ignored the deadline because she did not believe a brief was necessary. *See* Ann. Model Rules of Pro. Conduct r. 1.3 annot. Lawyer Not Relieved of Ethical Obligation by Delegating Work ("A lawyer who agrees to represent a client is not relieved of ethical obligations by delegating the work to others."). Whatever the reason, her conduct constitutes a failure to be reasonably diligent and prompt in representing her

001576

USAO 00038

Order of the Court
File No. D2017-0363

clients because she failed to manage her workload such that she could comply with court imposed deadlines and "all time and filing limitations." 8 C.F.R. §§ 1003.102(q)(1) and (2); *see also* Ann. Model Rules of Pro. Conduct r. 1.3 cmt. 2 (explaining that in order to act with reasonable diligence and promptness in representing a client, "[a] lawyer's work load must be controlled so that each matter can be handled competently"). Consequently, this Court adopts the allegations that the respondent failed to act with reasonably diligence and promptness related to Counts 12-16 and Count 19 in the NID.

### 3.  Counts 17-18 and Counts 20-24

In Counts 17-18 and Counts 20-24, the government alleges that the respondent failed to file applications for relief or ensure that her clients completed biometrics requirements by court imposed deadlines. The respondent does not contest that she failed to file applications or that biometrics were not completed, rather she provides explanations for her failure to comply with court ordered deadlines.

> #### a.  The Respondent's Conduct was Prejudicial to the Administration of Justice and Undermined the Integrity of the Adjudicative Process as it Relates to Counts 17-18 and Counts 20-24

As it relates to Count 17, the respondent stated in her answer that her client failed to provide the necessary documents to timely file her application for relief. (Exh. 3 at 60-61.) At the master hearing before Judge Keenan, the respondent sought additional time to prepare the applications for relief, but the request was denied. (*Id.* at 61.) The respondent's actions caused prejudice to the administration of justice and undermined the integrity of the adjudicative process because she took no steps to rectify her client's alleged failure. For instance, the respondent did not request additional time to prepare her client's application before the hearing. Instead, she appeared at the hearing and sought additional time to file her application, even though she knew that a failure to file the application could result in the judge deeming the applications abandoned. (Exh. 2 at 423.)

The respondent provided the same explanation for her failure to file an application for her client as detailed in Count 18 of the NID. (Exh. 2 at 64.) But, as Judge Keenan stated, the respondent "had a duty to comply with the court-ordered filing deadline or, in the alternative, provide a timely explanation about why she was unable to meet the deadline." (*Id.* at 65.) Moreover, as the respondent admitted to this Court at her disciplinary hearing, immigration courts are overburdened with cases, and if every alien sought to continue his case for the filing of applications because the alien failed to timely file them, it would severely impact the court's operations and ability to adjudicate cases.

001577

USAO 00039

Order of the Court
File No. D2017-0363

This admission alone demonstrates that the respondent's failure to timely file applications was prejudicial to the administration of justice. The respondent's admission is not the sole evidence to demonstrate prejudice to the administration of justice, however. Prior to the hearing, the respondent neither notified the Court nor sought a continuance for additional time to submit her client's applications for relief. Instead, she waited until the hearing to request a continuance despite being on notice of a court-ordered deadline. On its face, this conduct "seriously impairs or interferes with the adjudicative process" because a failure to file an applications on behalf of a client significantly impedes a judge's ability to expeditiously adjudicate the case, which in turn hampers the judge's ability to hear other cases on his docket.

Similarly, the respondent's conduct for the remaining counts (20-23) was proven by the government by clear and convincing evidence. The respondent's failure to file an application in those cases impaired and interfered with the court's ability to adjudicate cases. Without an application, a judge cannot schedule the case for an individual hearing, and by failing to notify the court prior to the hearing that no application would be filed, the judge could not schedule another case that may have been ready to proceed to an individual hearing. The respondent's explanations in her answer and testimony do not change this Court's findings. Like with Count 17, the respondent blamed her clients for failing to maintain contact with her so that she could timely submit their applications to the court and thus she asserted that she could not comply with the Court's order. (Exh. 3 at 64-65, 74-75.) As noted above, this explanation does not save the respondent from the prejudicial effects her inaction had on the adjudicative process. Had the respondent notified the court of her uncooperative client, she would have had a stronger case for this Court to find that the government had not met its burden. Rather than notify the court of her uncooperative client, the respondent said nothing and sought additional time to file an application when she was given ample opportunity to do so.

In her answer, the respondent explained that her client's failure to file his application as detailed in Count 23 was because he could not pay the application or biometrics fees. The respondent asserts that her client could not file his application without the filing fee because the instructions on the application for relief require a fee receipt for the court to accept the application. (*Id.* at 81.) In this case, biometrics were also not completed as required by the merits hearing. (*Id.* 82.) Ultimately, the respondent blamed the government because it did not run the respondent's fingerprints that it had based on the client's arrest in conjunction with his immigration case. (*Id.*) She also attempts to deflect from her failure to timely obtain biometrics by stating that her client could not afford the fees. Finally, she made a bold assertion that no "interest of the Immigration Court nor the

001578

Order of the Court
File No. D2017-0363

United States is harmed by accepting the 42b application, albeit 23 days after the due date, given the" families inability to pay the filing fees. (*Id.*) These explanations do not excuse the respondent's conduct and do not take her conduct outside the ambit of the professional code of conduct for a number of reasons.

At the outset, it should be noted that an Immigration Judge cannot grant relief from removal without biometrics clearance. *See* 8 C.F.R. § 1003.47(g) (stating that in "no case shall an immigration judge grant an application for immigration relief that is subject to" biometrics)  Without completed and cleared biometrics, the alien cannot demonstrate whether he is eligible for the relief that he seeks because some forms of relief are barred depending on the character of a prior conviction. *See* INA §§ 240A(a)(3) (stating that a lawful permanent resident cannot cancel his removal if he is an aggravated felon), 240A(b)(1)(B)(C) (stating that an alien cannot obtain cancellation of removal if he has been convicted of an aggravated felony, crime involving moral turpitude, or a controlled substance offense), 208(b)(2)(B)(i) (stating that an alien may not be granted asylum if he committed a particularly serious crime), and 241(b)(3)((B)(ii) (same). Effectively, a lack of biometrics means that a judge is left with a few options. The judge may grant a continuance so that biometrics can be completed, he can bifurcate the hearing and take some testimony and then continue the case so that biometrics can be completed, or he can find an application abandoned.[18] The first two options would delay an alien's case and negatively effect the administration of the adjudicative process because, as the respondent admitted, cases are scheduled months if not years in advance. In addition, there is no resolution for the respondent before the Court because biometrics were not completed. Finally, the respondent's speculation that there is no prejudice to the Court or government for filing the respondent's application 23 days late misses the point.

An Immigration Judge is obligated to timely and expeditiously resolve removal proceedings. 8 C.F.R. §§ 1003.10(b) and 1003.12. Both the Act and the regulations governing Immigration Courts reflect "Congress's intent to streamline the deportation process." *Matter of L-A-B-R-*, 27 I&N Dec. 405, 406 (A.G. 2018). Indeed, the "United States has a strong interest in the orderly and expeditious management of immigration cases." *Id.* (citing *Alsamhouri v. Gonzales*, 484 F.3d 117, 123 (1st Cir. 2007) (internal quotation marks omitted)). Granting a continuance can be an "efficient management tool for adjudicators and 'promote efficient case management.'" *Id.* (citing *United States v. Tanner*, 544 F.3d 793, 795 (7th Cir. 2008)). "But continuances are also 'readily susceptible

---

[18]  The grant of a continuance for a failure to obtain biometrics must be based on good cause shown. 8 C.F.R. § 1003.47(c). None of the explanations provided by the respondent demonstrate good cause for failing to obtain biometrics.

001579

USAO 00041

Order of the Court
File No. D2017-0363

to use as a delaying tactic.'" *Id.* (citing *Lee v. Kemma*, 534 U.S. 632, 366 (2002)). Failing to file applications for relief or the untimely filing of relief, and the resulting continuance that may follow "imposes no small burden on the immigration court—a burden that, as in ordinary litigation, 'counsels against continuances except for compelling reasons.'" *Id.* (citing *Morris v. Slappy*, 464 U.S. 1, 11 (1983)). This is particularly true in the immigration context as the United States Supreme Court has observed, "[o]ne illegally present in the United States who wishes to remain . . . has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible." *Id.* (citing *INS v. Rios-Pindeda* 471 U.S. 444, 450 (1985)).

Granting continuances indiscriminately for an alien's failure to timely file an application or complete biometrics adds to the Immigration Court backlog and does not expeditiously resolve cases. Moreover, if judges were to continue every case for aliens' failure to file applications for relief or complete biometrics, few cases would reach a timely resolution. Here, the respondent's actions exacerbated existing backlogs and negatively affected the administration of the adjudicative process by unnecessarily delaying it. *See* 8 C.F.R. § 1003.102(n) (stating that "any action or inaction that seriously impairs or interferes with the adjudicative process" is prejudicial to the administration of justice or undermines the integrity of the adjudicative process).

Nonetheless, the respondent had another option to ensure that she did not negatively affect the administration of the adjudicative process—she could have sought to waive the filing fee and biometrics fees that her clients apparently could not afford. *See* 8 C.F.R. 8 C.F.R. § 1003.24(d) (granting Immigration Judges the authority to waive filing fees for applications for relief). She did not do this. Instead, she claimed that an Immigration Judge does not have the authority to waive biometrics fees. While this is true, the government could certainly do so.[19] 8 C.F.R. § 103.7(c)(3)(i).

The respondent's explanation for her conduct as it relates to Count 20 was slightly different. In that case, the respondent was given a deadline by which to file an adjustment of status application and a family-based petition (Form I-130). (Exh. 1 at 30 ¶ 222-23.) The respondent failed to do so. (*Id.* at ¶ 223.) Over the DHS's objection, Judge Keenan granted the respondent's request for additional time and she was required to provide proof

---

[19] At her disciplinary hearing, the respondent stated she was unaware that the government could waive biometrics fees. This admission is surprising given the respondent's extensive experience in immigration proceedings. It does not, however, change the fact that the respondent could have avoided her failure to file applications and obtain biometrics based on her client's inability to pay the fees by seeking a waiver for each fee.

001580

of the filing at the next hearing. (*Id.* at 30-31 ¶ 224.) At the next hearing, no proof of filing was provided to the court, and counsel who appeared stated that he was unaware that proof of filing was required.[20] (*Id.* at 31 ¶ 227.) Once again, Judge Keenan granted a continuance to provide proof that the application was filed. (*Id.* at ¶ 231.) A number of additional hearings were held and a number of excuses were given for failing to provide a fee receipt, including that the application was rejected because the wrong fee was submitted. (*Id.* at 31-32 ¶¶ 233-34.) Each time, over the DHS's objection, Judge Keenan granted a continuance. (*Id.* at 32 ¶¶ 235-38 and 241.)

The respondent's answer stated that ultimately the applications were filed but because her clients moved while the applications were pending, they did not receive the fee receipt. (Exh. 3 at 72.) She asserted that she is aware of the need to "move matters along, however, in cases where there is no dispute raised regarding eligibility for relief, it would seem, as a matter of public interest, appropriate to permit the parties the time necessary to produce the required documentation to permit the Court to favorably act." (*Id.*) For the respondent, this is particularly true in the context of *pro bono* representation who are "community volunteers" acting as "friend of the Court, working with families to prepare the required forms and collect the required documentation." (*Id.* at 72-73.)

The respondent's conduct and her explanation in her answer as it relates to Count 20 only illuminates this Court's point regarding the effect a failure to abide by court imposed deadlines has on the adjudicative process. The case was continued five times to provide proof that the application and family-based petition was filed. (Exh. 1 at 30-31 ¶¶ 224, 228, 232, 235, 241.) These continuances spanned over 18 months—from May 2, 2017, until November 13, 2018.[21] (*Id.*) Such delays required hearing time, the court's preparation, and other hearings could not be heard due to the respondent's inability to abide by court-imposed deadlines. *See Matter of L-A-B-R-*, 27 I&N Dec. at 406 (stating that continuances "impose no small burden on the immigration court") In the end, this Court adopts the allegations that the respondent's failure to abide by court imposed deadlines related to Counts 17-18 and Counts 20-24 in the NID and finds they have been proven by clear and convincing evidence.

---

[20] The respondent did not appear at this hearing.

[21] It appears that some of the delay was based on the court rescheduling the case on its own. (Exh. 1 at 31-32 ¶¶ 225 and 229.) These delays do not take away from the fact that the respondent was largely responsible for the delays in her client's case and those delays negatively impacted the adjudicative process.

001581

USAO 00043

Order of the Court
File No. D2017-0363

   b. *The Respondent Failed to Provide Competent Representation and Reasonable Promptness as it Relates to Counts 17-18 and Counts 20-24*

   The government alleged that the respondent's conduct as detailed in Counts 17-18 and Counts 20-24 demonstrate that she failed to competently represent her clients. The respondent disagreed, arguing in her answer as noted above, that her clients failed to provide her with the required information or they did not have the funds to pay the filing fees.

   The respondent's conduct fell short of her duty to competently represent her clients. In the cases where the respondent failed to file an application for relief, the judge found the applications abandoned and ordered the respondent's clients removed or granted voluntary departure.[22] (Exh. 1 at 25-26, 30-40 ¶¶ 176, 190, 253, 265, 273, 284.) In one case where biometrics were not completed, the client was granted voluntary departure. (*Id.* at 35-36 ¶¶ 264-265.) The respondent's actions lacked thoroughness and she was not prepared as was reasonably necessary for these cases. Her conduct also lacked reasonable diligence because she failed to act with reasonable promptness and repeatedly did not comply with court imposed deadlines as required by the applicable regulations. *See* 8 C.F.R. § 1003.102(o) (stating competent representation required thoroughness and "preparation reasonably necessary for the representation"); 8 C.F.R. § 1003.102(q) (stating that reasonable diligence and promptness requires a practitioner to act "with reasonable promptness" and to comply with "timing and filing limitations"). She did not seek a waiver of filing fees for cases in which the client could not afford the application fee or the biometrics fee. In fact, she claimed in her testimony before this Court, that she was not even aware that biometrics fees could be waived. Instead of doing any of these things, the respondent sought additional time rather than resolving her clients' financial obstacle by obtaining a waiver of fees. In cases where her clients were uncooperative, the respondent did not seek to continue the hearing prior to the scheduled hearing date to try and resolve the client's cooperation.

   The respondent's conduct related to Count 17 illustrates this Court's findings as it relates to the allegations that the respondent failed to competently represent her clients or to act with reasonable diligence. In that case, the respondent failed to timely file an application for relief. (Exh. 1 at 24-25 ¶¶ 171-76.) Judge Keenan ordered the respondent's

---

  [22] The client in Count 20 was not ordered removed nor was voluntary departure granted. It appears that the case is still pending the adjudication of the family-based petition. (Exh. 1 at 32 ¶ 241.)

001582

USAO 00044

Order of the Court
File No. D2017-0363

client removed, finding her applications for relief abandoned because she failed to timely file them. (*Id.*) According to Judge Keenan's testimony, the alien was a lawful permanent resident and was seeking to maintain such status through cancellation of removal. After the removal order was issued, the alien hired new counsel and filed a motion to reopen, claiming ineffective assistance of counsel by the respondent. (*Id.* at 25 ¶ 177.) Judge Keenan granted the motion (*Id.* at ¶ 178) and according to his testimony ultimately granted the alien's relief from removal. The respondent's inaction in this case resulted in a severe consequence to her client—a removal order. "Deportation can be the equivalent of banishment or exile." *Delgadillo v. Carmichael*, 332 U.S. 388, 391 (1947) (citation omitted). As such, the "stakes are indeed high and momentous" especially for an "alien who has acquired [her] residence" in the United States. *Id.* Despite these dire consequences, the respondent failed to abide by her obligations to timely file the alien's application for relief, which initially resulted in her removal. While the respondent claims that her client did not cooperate with her to file her relief application (Exh. 3 at 60-61), the record demonstrates that she was indeed ineffective and it was her failure to act in accordance with the rules of professional conduct that resulted in her client's removal order. (Exh. 1 at 25 ¶¶ 177-78; Exh. 3 at 424-25, 428-37.) Accordingly, this Court adopts the allegations detailed in Counts 17-18 and Counts 20-24 in the NID.

## V.    DISCIPLINARY SANCTIONS

Once an adjudicating official finds that a practitioner has violated the rules of professional conduct, it must decide whether to impose disciplinary sanctions. 8 C.F.R. § 1003.101(a). Disciplinary sanctions may be imposed "against any practitioner" if the adjudicating official "finds it to be in the public interest." *Id.* An adjudicating official may disbar a practitioner from the "practice before the Board and the Immigration Courts or the DHS, or before all three authorities[.]" 8 C.F.R. § 1003.101(a)(1). A practitioner may be "suspended, including immediate suspension," from any of the above three listed authorities. 8 C.F.R. § 1003.101(a)(2). An adjudicating official may issue a "[p]ublic or private censor" or any "other disciplinary sanctions as the adjudicating official or the Board deem appropriate." 8 C.F.R. §§ 1003.101(a)(3) and (a)(4). Practitioners and accredited representatives are subject to disciplinary sanctions, but attorneys who represent the federal government are not subject to the professional code of conduct in the regulations at issue in this case. 8 C.F.R. § 1003.101(b).

The regulations do not define when it is in the public interest to sanction a practitioner. Disciplinary sanctions, however, must be imposed if a practitioner "engaged in criminal, unethical, or unprofessional conduct, or frivolous behavior" as defined in the regulations. 8 C.F.R. § 1003.101(a). There is no guidance in the regulations regarding the

001583

Order of the Court
File No. D2017-0363

type or length of sanction that should be imposed, even in circumstances that mandate a sanction. This Court, therefore, looks to Arizona disciplinary cases and the American Bar Association (ABA) as instructive and persuasive authority in determining whether to impose sanctions and the appropriate sanction to impose.

The purpose of disciplinary sanctions is "to protect the public, the legal profession, and the legal system and deter other attorneys from engaging in unprofessional conduct." *In re Non-Member of State Bar of Arizona Van Dox*, 214 Ariz. 300, 303 (2007) (*en banc*). Disciplinary sanctions are also designed to "instill public confidence" in the state bar's integrity. *In re Abrams*, 227 Ariz. 248, 252 (2011). Sanctions are not intended to punish the practitioner, although that may be the incidental effect. *In re Van Dox*, 214 Ariz. at 303. The ABA suggests that disciplinary authorities should consider four factors when imposing an appropriate sanction—"(1) the duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating circumstances." *Id.* (citing *ABA Standards*, Standard 3.0).

A reprimand "is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client." *Id.* (citing *ABA Standards*, Standard 4.13). Such a sanction, however, is usually only fitting "when a lawyer engages in an isolated instance of negligence in determining whether he or she is competent to handle a legal matter, and causes little or no actual or potential injury to a client." *Id.* (citing *ABA Standards*, Standard 4.54).

## A. Disciplinary Sanctions are Appropriate in this Case

The regulations require some form of disciplinary sanctions given this Court's finding that the respondent behavior was frivolous. In particular, as noted above, this Court concluded that the respondent engaged in frivolous behavior as detailed in Counts 1-9 and Count 11. Based on these findings alone, this Court is obligated to issue some disciplinary sanction. 8 C.F.R. § 1003.101(a). Even if this Court did not find that the respondent engaged in frivolous behavior, however, the totality of the respondent's conduct as discussed in detail above, compels the conclusion that some form of disciplinary sanction is necessary. In summary, the respondent engaged in a pattern and practice of misconduct, including failing to provide specific grounds for appeals in ten cases after affirmatively stating an intent do so in the Notice of Appeal, failure to file court-ordered briefs in six cases, and failure to file applications for relief or complete biometrics by court imposed deadline in seven cases. This conduct demonstrates that it is in the public interest to sanction the respondent. Her conduct gives little confidence to the public that it will be well-served when a practitioner behaves frivolously, repeatedly fails to file appellate briefs

USAO 00046

Order of the Court
File No. D2017-0363

despite stating that she will do so, repeatedly fails to file briefs when ordered to do so, fails to file applications for relief, and fails to ensure biometrics are completed prior to a merits hearing. This conduct also enormously affects the adjudicative process. Immigration Judges and the Board cannot efficiently resolve cases when a practitioner routinely ignores court orders and deadlines. The immigration court system has a substantial backlog of cases and the respondent's conduct helped exacerbate the backlog. And in at least one case, as related in Count 17 of the NID, the respondent's client was ordered removed even though she eventually was able to maintain her lawful permanent resident status because the judge reopened her case based on an allegation of ineffective assistance of counsel by the respondent.

### B. The Four ABA Factors

As noted above, when determining an appropriate sanction, this Court is to consider a number of factors. *In re Van Dox*, 214 Ariz. at 303. Those factors are "(1) the duty violated, (2) the lawyer's mental state, (3) the actual or potential injury caused by the lawyer's misconduct, and (4) the existence of aggravating or mitigating circumstances." *Id.* (citing *ABA Standards*, Standard 3.0). These factors and their application to the respondent's case are discussed in detail below.

#### 1. The Duty Violated

In this case, the duty the respondent violated is core to her responsibility as counsel of record. As detailed above, the respondent violated a number of duties related to her professional responsibility before the Immigration Courts and the Board. *See* 8 C.F.R. §§ 1003.102(j) (frivolous behavior); (2) 8 C.F.R. § 1002.102(n) (conduct prejudicial to the administration of justice); (3) 8 C.F.R. § 1002(o) (competence); and (4) 8 C.F.R. § 1003.102(q) (diligence and promptness). A practitioner is obligated to ensure she prepares an appeal prior to filing a Notice of Appeal. This is because by filing such a notice, the practitioner is stating that there is an "arguable basis in law or fact" which is something the respondent knew or "reasonably should have known[.]" 8 C.F.R. § 1003.102(j). Moreover, she failed to make any reasonable effort, including seeking a copy of the recording of the hearing from the Immigration Court or reviewing the ROP at the Court, for Counts 1-9 and Count 11. As such, she could not demonstrate that the appeal was "well-grounded in fact and [was] warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law[.]" 8 C.F.R. § 1003.102(j)(1). At a minimum, once the respondent realized that there were no appealable issues, she should have sought to withdraw the appeal she filed with the Board. She did not do that. Instead, she merely waited for the Board to summarily dismiss the appeal, which makes a

001585

Order of the Court
File No. D2017-0363

mockery of the appellate process. Just as it would be egregious to routinely ignore appeals filed before a state or federal appellate body, it was egregious for the respondent to make it her practice to routinely ignore warnings and deadlines from the Board.

Not only did this conduct amount to frivolous behavior, but it also affected the administration of justice and undermined the integrity of the adjudicative process by requiring the Board to decipher the basis of the appeal, requiring it to expend time and resources on an appeal that may ultimately be "utterly without merit." *Singh*, 416 F.3d at 1010. Moreover, the respondent failed to competently represent her clients because she did not analyze their cases before filing a Notice of Appeal as required by the regulations. *See* 8 C.F.R. § 1003.102(o) (stating that representation requires thoroughness and preparation "reasonably necessary for the representation[] and that a practitioner must inquire and analyze "the factual and legal elements of the problem").

Ultimately, disciplinary sanctions are appropriate because the respondent violated her ethical duties when appearing before the Immigration Courts and the Board. She failed to follow proper procedures related to appeals to the Board, she repeatedly failed to follow court imposed deadlines, and as a result many of her clients were removed from the United States. Her failure to abide by court imposed deadlines strikes at the heart of the adversarial process. "Removal proceedings, which are adversarial in nature, are designed to provide the parties with an opportunity to develop the record by presenting evidence and testimony before an Immigration Judge[.]" *Matter of W-Y-C- & H-O-B-*, 27 I&N Dec. 189, 190 (BIA 2018). It is only then that a judge can make "the necessary factual findings and legal conclusions based on the claims presented." *Id.* at 190-91. An applicant for relief bears the "burden to establish her claim for relief or protection on the record before the Immigration Judge." *Id.* at 191. The respondent's failure to file applications for relief, briefs, or completing biometrics goes to the heart of an Immigration Judge's duty to adjudicate relief from removal. Without the benefit of evidence and testimony, a judge cannot decide whether an alien will remain in the United States or be removed. The respondent's failure to follow court ordered requirements undermined and slowed the entire administrative process and was a clear violation of her duty to the court. In no other adversarial or judicial setting would this behavior be acceptable.

### 2. The Practitioner's Mental State

A practitioner's "mental state affects the sanction for ethical violations." *In re Dox*, 214 Ariz. at 303. "Intentional or knowing conduct threatens more harm to the public, the legal system, and the profession than does negligent conduct, and is accordingly sanctioned more severely." *Id.* (citing ABA *Standards* at 9-10.) This Court is also required to

Order of the Court
File No. D2017-0363

determine the injury caused by the respondent's actions. *In re Abrams*, 227 Ariz. at 251-52 (citation omitted). Injury is defined as "the harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct." *Id.* (citation omitted). Some of the conduct discussed above appears to be reckless, but most of it is an intentional and knowing disregard by the respondent of her duty as a practitioner and her obligation to comply with court ordered deadlines.

The respondent's mental state is telling regarding her true attitude toward her own misconduct. In nearly each instance, the respondent blamed others or the regulations for her conduct rather than taking responsibility for her actions. As it relates to counts failing to file appellate briefs, the respondent stated that it was her practice to file a Notice of Appeal before analyzing the respondent's case for possible appealable issues. In the notice, the respondent would vaguely claim that the judge committed error as a matter of law. This notice was insufficient to apprise the Board of the basis for the respondent's appeal and demonstrates an utter lack of preparation by the respondent as she was obligated to do. As noted above, the deadline to file a Notice of Appeal is short, but that is the time frame the Agency set to file an appeal. Filing a Notice of Appeal is not like filing a Notice of Intent to Appeal, where a litigant is merely preserving his or her right to appeal. *Compare* EOIR Form 26 *with* Form 1 for the United States Court of Appeals for the Ninth Circuit Court of Appeals. For the respondent, allowing a case to be summarily dismissed by the Board "is the appropriate procedural result after the practitioner scrutinized the record for errors and/or omissions and identified none." (Exh. 3 at 16.) This is not the appropriate way to handle appeals to an appellate body. Appellate advocacy requires more than a mere boilerplate statement that a judge erred as a matter of law. Moreover, the normal process would be that counsel determine whether an appealable issue exists before filing a Notice of Appeal. By doing otherwise, the respondent frivolously filed Notices of Appeal because she failed to first inquire under the circumstances an appeal "is well-grounded in fact and is warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law and is not interposed for any improper purpose." 8 C.F.R. § 1003.102(j)(1).

The respondent claims that there was no prejudice to Judge Keenan when she failed to file briefs as ordered by the court. She asserted that the judge had all of the information necessary to make a decision in each case and thus a brief would not have changed the outcome of the case. These statements reflect that the respondent does not appreciate the adverse impact of her conduct on the adjudicative process. After questioning by this Court, the respondent admitted in her testimony, that a well-drafted and cogent brief can convince a judge to grant relief even though the judge may have all of the evidence before him. From

USAO 00049

Order of the Court
File No. D2017-0363

the respondent's reaction to this Court's question, it is clear to this Court that it did not even occur to the respondent that a judge could be persuaded by a brief that it ordered a practitioner to file. Moreover, the respondent stated that the *pro bono* clinic did not "have capacity to produce a pre-trial brief." (Exh. 3 at 53.) This lack of understanding and workload issues shows that the respondent's mental state as it relates to the failure to follow court-ordered briefs was certainly reckless at best, but more likely an intentional, flagrant violation of court orders. This Court can come to no other conclusion given the repeatedly violations listed in the NID.

The respondent also blamed her client's for her failure to timely file applications for relief. In each instance related to her failure to file relief, the respondent did nothing to notify the court prior to each scheduled hearing. She never sought a continuance before the hearing and did not notify the judge that her client was uncooperative or a client's whereabouts were unknown. To be sure, the respondent has a responsibility to her client, but she also has an obligation to meet court imposed deadlines and notify the court of her inability to satisfy her duty to comply with those deadlines. 8 C.F.R. §§ 1003.102(o) (stating that competent representation requires a practitioner to be prepared to properly represent a client) and 1003.102(q) (stating that a practitioner should act "with reasonable diligence and promptness in representing" her client and to do so she should control her workload to ensure that she can comply "with all time and filing limitations")

In most cases, as it relates to biometrics requirements, the respondent claimed that the inability of her clients to pay biometric fees should not be held against her. The problem with this explanation is that it demonstrates her mental state of, at a minimum, negligence because the respondent could have sought a waiver of the biometrics fee. 8 C.F.R. § 103.7(c)(3)(i). In her answer, the respondent repeatedly stated that a judge may only waive an application fee, but has no authority to waive biometrics fees. While this is true, the respondent's failure to even request that the judge waive the filing fee for an application for relief, not to mention her failure to request the same from the DHS, demonstrates a complete disregard of her duties as counsel of record. Even if the respondent was unaware that the government could waive the biometrics fees, she certainly could have requested the cost of an application be waived to lessen the financial burden to her clients so that they could pay the biometrics fee.

### 3.   The Actual or Potential Injury Caused by the Practitioner's Misconduct

Injury in this context is defined as "harm to a client, the legal system, or the profession which results from a lawyer's misconduct." *In re Dox*, 214 Ariz. at 305 (citing

001588